**John AMORATIS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CAROLINA FREIGHT CARRIERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 1997.
Decided Jan. 13, 1998.

---

1. Act of July 3, 1986, P.L. 388, added by the Act of June 15, 1993, P.L. 95, 65 P.S. § 280.1.

Paul J. Downey, Philadelphia, for Petitioner.

Mitchell I. Golding, Philadelphia, for Respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

John Amoratis petitions this Court for review of a Workers' Compensation Appeal Board (Board) order that reversed in part and sustained in part a Worker's Compensation Judge's decision. The Board reversed that part of the WCJ's order awarding litigation costs to Amoratis' counsel under Section 440 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996.

We first set forth a detailed account of what has transpired in this case, because, afterwards, the result becomes clear. Amoratis sustained a work-related lower back injury on January 29, 1991 while unloading a skid. He received compensation pursuant to a notice of compensation payable. Carolina Freight Carriers (Employer) thereafter filed three petitions——a modification petition (alleging that Amoratis' physical condition had changed, allowing him to do light duty work, and that he failed to apply in good faith for suitable, available work); a petition for review of medical treatment; and a suspension petition (alleging that Amoratis' benefits should be suspended because he refused to accept reasonable and necessary medical treatment in the form of a myelogram as of May 20, 1992).

To support these petitions, Employer deposed Stanley Askin, M.D., a board-certified orthopedic surgeon, who examined Amoratis on January 29, 1992. Dr. Askin acknowledged in his testimony that, although he had recommended in his report that Amoratis undergo a myelogram, Amoratis refused. Dr. Askin also testified to restrictions he had placed on Amoratis that would allow him to perform full-time, sedentary work. The WCJ accepted Dr. Askin's opinion as credible.

Pursuant to Dr. Askin's restrictions, set forth in a functional capacity form, Employer had offered Amoratis a light duty office clerk position. The WCJ specifically found in this regard: [1]

20. The Claimant was given notification by regular and certified mail of the availability of the position of light duty office clerk on May 20, 1992. The job notification letter, which had attached Dr. Askin's functional capacity form as well as the functional capacity form describing the exertional requirements of the light duty office clerk position, advised the Claimant of Dr. Askin's specific restrictions as well as each specific exertional requirement of light duty office clerk position. The job notification form further informed the Claimant of the name, address and telephone number of the contact person to contact if he was interested in returning to work. The job notification letter further informed the Claimant of the shift he would be working and the hourly wage he would be receiving.

21. The Claimant never contacted Mr. Spradlin [Rick Spradlin, Employer's District Manager] concerning the opportunity to return to the position of full-time light duty officer clerk.... During cross examination of Mr. Spradlin, Claimant's counsel noted that the Claimant, on May 28, 1992, contacted Employer's counsel advising that the Claimant was willing and interested in testing his abilities and would like to perform "chores" based upon Claimant's desired schedule and based upon the hours the Claimant wished to work. Claimant's counsel further informed the Employer that under no circumstances would the

---

1. Citations to the certified record, with accompanying commentary, are omitted.

Claimant commit to a five day, forty hour work week. . . .

22. Claimant did not testify that any physician advised him on or about May 20, 1992 that it would be medically inappropriate for the Claimant to attempt to perform the light duty office clerk position for an eight hour day. . . .

(WCJ's Decision, Findings of Fact Nos. 20–22, circulated May 12, 1995, pp. 8–9). The WCJ found the testimony of Rick Spradlin credible.

The WCJ then modified Amoratis' benefits to zero as of May 20, 1992 because he concluded that Amoratis did not exhibit good faith when he declined to try to perform the position offered by Employer on that date. He also suspended Amoratis' benefits as of September 23, 1992. In doing so, the WCJ noted that this suspension order was moot in light of his modification of Amoratis' benefits. The WCJ further awarded litigation costs to Amoratis' counsel on the basis of Amoratis' partial success in litigating against Employer's supersedeas request and suspension petition, where Amoratis' benefits were suspended as of September 23, 1992, not May 20, 1992, as Employer had wanted.

Amoratis appealed to the Board, and Employer cross-appealed on the issue of the WCJ's award of litigation costs to Amoratis' counsel. After the Board rendered its decision reversing in part and sustaining in part the WCJ's decision, as previously explained, Amoratis' petition for review to this Court followed.

2. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

3. On re-direct examination, Amoratis testified as follows:

Q. Sir, isn't it true that your offer was to go to Carolina Freight and try to do occassional [sic] chores on your old schedule as you felt reasonable?
A. I believe that was the offer.
Q. You never actually offered to report to work at 8:30 a.m. to perform this light duty job?

Amoratis now raises the following issues. 1) Whether the Board erred in finding that Amoratis failed to make a good faith effort to pursue available work; and 2) whether the Board erred in reversing the WCJ's award of costs to Amoratis' counsel.[2]

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Supreme Court set forth these guidelines.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue. 516 Pa. at 252, 532 A.2d at 380.

Amoratis argues that, despite his reservations, he was willing to try to undertake the light duty position; therefore, his conduct was not tantamount to bad faith under *Kachinski*. Nevertheless, the WCJ found and the record reflects that Amoratis was unwilling to do the full-time, light duty job as offered to him even though Employer properly informed him that it was within his medical restrictions.[3] Moreover, when asked

A. No. I couldn't offer that.
Q. Your offer was to show up and do occassional [sic] chores, correct?
A. Correct.
Q. When you felt willing to perform a chore, correct?
A. Willing or when I was able to?
Q. At your own schedule. When you felt willing and able to you would show up and perform an occassional [sic] chore. That was your offer, correct?
A. I believe so, yes.
Q. In fact in this letter that was sent to you by your attorney carbon copied to you, who stated, "under no circumstances are we willing to commit at the present time to a five day, 40 hour week," correct?
A. Yes.

if he had ever applied for this full-time position, Amoratis admitted that he had not. (N.T., Testimony of John Amoratis, January 14, 1993, p. 25). Therefore, we reject his first argument.

Next, Amoratis contends that the Board erred in reversing the WCJ's award of costs to his counsel. Amoratis contends that his "partial success" in this case warranted an award of litigation costs, relying on *Braun Baking Company v. Workmen's Compensation Appeal Board (Stevens)*, 136 Pa. Cmwlth. 499, 583 A.2d 860 (1990).[4] Nevertheless, as Employer notes, *Braun*, which involved both suspension and termination petitions, is distinguishable from the case at bar, not least because, there, unlike here, the employer did not prevail on the merits of each of its petitions.

 In *Braun*, the employer's suspension petition was granted, while its termination petition was denied. This Court thereafter declined to overturn an award of costs to the claimant, where the claimant successfully defended the suspension petition filed against him. The matters at issue here, however, were all finally determined in Employer's favor, resulting in an order to modify Amoratis' benefits, suspend his benefits, and in a decision that certain medical treatment was not reasonable or necessary. Because a decision on a supersedeas matter is not a final determination pursuant to section 440, we reject Amoratis' last argument.

Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this 13th day of January, 1998, the order of the Workers' Compensation Appeal Board, No. A95-2232, dated June 17, 1997, is hereby affirmed.

(Notes of Testimony, N.T., Testimony of John Amoratis, January 14, 1993, pp. 31–32.)

4. Section 440 of the Act, 77 P.S. § 996, *amended by* the Act of July 2, 1993, P.L. 190 (which took

effect in 60 days) provides that an employe is entitled to reasonable costs where the contested issue is wholly or partially finally determined in his favor.