# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Luby,                                     :
                            Petitioner          :
                                                :
            v.                                  :   No. 499 C.D. 2016
                                                :   Submitted: September 16, 2016
Workers' Compensation Appeal                    :
Board (Valley Crest Nursing, d/b/a              :
Timber Ridge Health Care),                      :
                            Respondent          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION
BY JUDGE COHN JUBELIRER                          FILED: December 28, 2016

        Carol Luby (Claimant) petitions for review of the Order of the Workers'
Compensation Appeal Board (Board), affirming, as modified, the decision of a
Workers' Compensation Judge (WCJ). The Board modified the WCJ's denial of
Claimant's Petitions to Review and Reinstate Compensation Benefits
(Review/Reinstatement Petitions)[1] to recognize that Claimant sustained a work-
related left knee contusion that had not been recognized in the Notice of

---

[1] Claimant initially filed a Claim Petition, which was subsequently amended to be the
Review/Reinstatement Petitions because there was a Temporary Notice of Compensation
Payable that converted into a Notice of Compensation Payable recognizing that Claimant
sustained a disabling work-related right ankle injury.

Compensation Payable (NCP), but it affirmed the WCJ's finding that Claimant did not sustain a work-related torn medial meniscus in her left knee and, therefore, any treatment and disability related to that injury were not compensable under the Workers' Compensation Act (Act).[2]  The Board also affirmed the WCJ's decision granting Valley Crest Nursing and Rehabilitation, d/b/a Timber Ridge Health Care's (Employer) Petition to Terminate Compensation Benefits (Termination Petition) and denying Claimant's request for litigation costs.  On appeal, Claimant argues that:  she should have been awarded litigation costs under Section 440(a) of the Act[3] because she partially prevailed on her Review Petition; and the WCJ's decision granting the Termination Petition is not supported by substantial evidence.  Discerning no error, we affirm.

Claimant has worked for Employer, a nursing home, in a variety of positions since 1989, and began working as a full-time Certified Nursing Assistant (CNA) for Employer on April 1, 2012.  On June 10, 2012, Claimant fell at work, and Employer initially accepted a right ankle injury in a Temporary Notice of Compensation Payable, which converted by law into a NCP.  Claimant was out of work from June 11, 2012 until March 13, 2013, and she received workers' compensation benefits for that period.  Claimant filed a Claim Petition on December 10, 2013, which was amended to be the Review/Reinstatement Petitions on April 4, 2014, asserting that she also sustained an injury to her left knee in the June 10, 2012 fall, resulting in disability from July 4, 2013 to September 4, 2013. (R.R. at 1-5; WCJ Decision at 3.)  Employer filed an Answer acknowledging that it

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1-1041.4, 2501-2708.
[3] 77 P.S. § 996.  Section 440(a) was added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended.

had accepted a right foot/ankle injury but denying any responsibility for the alleged left knee injury. (R.R. at 6-9.) Employer filed its Termination Petition on January 6, 2014, asserting that, based on the results of an Independent Medical Examination (IME) performed on July 26, 2013, Claimant had fully recovered from the accepted work-related right foot/ankle injury and was able to return to unrestricted work. (R.R. at 10-11.) Claimant filed an Answer denying the allegations in the Termination Petition. (Id. at 12.) The matters were assigned to a WCJ.

In support of the Review/Reinstatement Petitions, Claimant testified before the WCJ and described her work history, her injuries, and her medical treatment as follows.[4] At approximately 1:30 a.m. on June 10, 2012, Claimant was walking away from a resident's bed when a wire from under the bed wrapped around her ankle and tripped her. Claimant fell, landed on her left knee, and jerked her right ankle. Claimant immediately noticed pain in her right ankle, and pain and a bruise on her left knee. Claimant was sent to the hospital, where they x-rayed her ankle, examined her knee, released her, but told her to go to Concentra the next day. After treating with Concentra without improvement, Claimant was referred to Peter A. Feinstein, M.D., an orthopedic surgeon. Dr. Feinstein placed Claimant's right foot and ankle in a walking boot for six months. After the walking boot was removed, Dr. Feinstein then began treating Claimant's left knee for a torn medial meniscus, and she underwent arthroscopic surgery on October 4, 2012. Claimant was off work from June 11, 2012 to March 13, 2013, when Dr. Feinstein released her to full duty without restrictions, and she received workers' compensation benefits for that period for the recognized injury to her right ankle. Her left knee

---

[4] Claimant's testimony can be found at pages 19-53 of the Reproduced Record.

3

still hurt in March 2013 when she returned to full-duty work, and Claimant took Aleve for the pain. Claimant's left knee continued to give her pain, and Dr. Feinstein removed her from work in April 2013. Claimant went to Michael Raklewicz, M.D., who, after examining Claimant in May 2013 and sending her to physical therapy, performed a total knee replacement of Claimant's left knee on July 5, 2013. Claimant did return to work for a period of time between May 2013 and her surgery in July 2013. Claimant was off work from July 5, 2013 until September 3, 2013, when she returned to her normal CNA position. She did not receive workers' compensation benefits for that time period. The bills for her knee replacement surgery and physical therapy related to that knee injury were denied by Employer's workers' compensation carrier. Currently, Claimant's right ankle, while stiff, is not a problem, but her left knee continues to hurt. Claimant never had any problems with her right ankle or left knee prior to her fall at work. Prior to her injuries, Claimant worked between 25 and 30 hours per week for a local grocery store but has only worked 6 hours per week since March 2013. (R.R. at 23-37, 39-43.)

Claimant offered the deposition testimony of Dr. Feinstein to support her claim that her torn medial meniscus was work-related, who testified as follows.[5] He first examined Claimant on July 24, 2012, who informed him of the history of her injuries and of her treatment of her ankle injury thus far. After reviewing medical records and an MRI of Claimant's ankle performed on June 25, 2012, Dr. Feinstein diagnosed Claimant with a ruptured right Achilles tendon and successfully treated the injury non-operatively. Claimant did not mention any pain

---

[5] Dr. Feinstein's deposition testimony can be found at pages 112-159 of the Reproduced Record.

4

in her left knee to Dr. Feinstein until August 22, 2012, because she was preoccupied with her ruptured Achilles tendon. Dr. Feinstein indicated that it was not surprising that Claimant did not complain more about her left knee during her initial examinations but was more focused on her Achilles tendon injury, which is very painful. Dr. Feinstein examined Claimant's left knee and reported that she had discomfort consistent with a torn medial meniscus, and he had Claimant undergo an MRI of her left knee, which revealed, *inter alia*, a torn medial meniscus and some arthritis in the medial joint compartment. Dr. Feinstein performed an arthroscopic procedure on Claimant's left knee on October 4, 2012, which revealed a complex tear of Claimant's "medi[]al meniscus with severe degenerative changes medial femoral condyle and medial aspect of the lateral tibial plateau." (Id. at 121-22.) Dr. Feinstein diagnosed Claimant as having a traumatic torn medial meniscus. Claimant continued to complain of knee pain and have positive findings regarding her knee, but she nevertheless went back to work on March 13, 2013, despite Employer not having a light-duty position. Dr. Feinstein removed Claimant from work again in April 2013. Dr. Feinstein found Claimant was fully recovered from her right ankle injury and was capable of returning to work following his May 1, 2013 examination. (Id. at 114-26, 154.)

Dr. Feinstein performed an IME of Claimant on May 14, 2014, during which Claimant informed him that her ankle was fine, she had had a total knee replacement in July 2013, and she had returned full time to her regular duty CNA position in September 2013. Dr. Feinstein attributed both the torn right Achilles tendon and the torn medial meniscus in Claimant's left knee, and her corresponding periods of disability, to Claimant's work fall of June 10, 2012. Dr. Feinstein noted that, although Claimant did have some underlying arthritis issues,

5

there was no indication in her medical records that she ever had symptoms related to or was treated for that arthritis. Rather, he concluded that when one "logical[ly] connect[ed] . . . the dots," "[s]he had a traumatic incident in which the MRI scan showed a torn cartilage in a degenerative situation" and that the previously asymptomatic arthritis or degenerative condition "became symptomatic as a result of th[e] fall, [which] progressed to the point where she needed a joint replacement." (Id. at 133-34, 148.) In his May 14, 2014 IME Report, Dr. Feinstein "agree[d] at this point that [Claimant] has achieved a full and complete recovery from the 06/10/12 work injury, to include her right ankle and her left knee." (Id. at 187.) On cross-examination, Dr. Feinstein acknowledged that Claimant never specifically informed him of the mechanism of the injury to her left knee and that a torn meniscus is something that can result from the progression of degenerative changes and in the absence of any trauma. Dr. Feinstein also agreed that Claimant's weight could have been a significant factor in the aggravation of the degenerative condition in her left knee and that it was possible that some patients, including Claimant, could have a degenerative condition in one knee and not the other knee, even in the absence of trauma. (Id. at 126-27, 132-36, 139, 144, 147-48, 154-55, 187.)

Employer presented the deposition testimony of Richard G. Schmidt, M.D., the board-certified orthopedic surgeon who performed the IME of Claimant on July 26, 2013, who testified as follows.[6] Dr. Schmidt reviewed Claimant's medical records prior to his examination of Claimant and obtained from Claimant a history of how the alleged injuries occurred and how they have been treated. In describing

_____

[6] Dr. Schmidt's deposition testimony can be found at pages 62-92 of the Reproduced Record.

6

what occurred on June 10, 2012 to Dr. Schmidt, Claimant informed him that her primary complaints were related to her right ankle and she did not recall whether she had twisted her left knee, which was an important factor in Dr. Schmidt's opinion because it effects the mechanism of any knee injury. Claimant told Dr. Schmidt that she currently did not have any complaints or problems with her right ankle. (Id. at 67-68.) Dr. Schmidt described Claimant's right ankle injury as a torn Achilles tendon, which had been successfully treated non-operatively with the use of a removable boot. His examination of Claimant's right ankle was normal. Based on his review of the records and his examination of Claimant, Dr. Schmidt opined that Claimant had fully recovered from the work-related right ankle injury. (Id. at 64-69, 71-72.)

With regard to Claimant's alleged left knee injury, Dr. Schmidt reviewed Dr. Feinstein's operative report from the arthroscopic surgery in October 2012, which revealed a complex tear and significant osteoarthritis of Claimant's knee. His review of the medical records that were contemporaneous to Claimant's June 10, 2012 fall, including the June 11, 2012 examination note from Concentra, indicated that her left knee had been examined, the examination results were objectively normal, and she had a contusion on her left knee. Dr. Schmidt disagreed with Dr. Feinstein's opinion that it was normal for Claimant not to have complained of knee pain immediately following the fall because of the nature of the Achilles tendon injury, noting that if one sustained an acute meniscal tear, the person would have complaints immediately and would experience swelling inside the knee within 24 hours, which did not occur here. Claimant's complaints at the time of the IME were that she still had discomfort and swelling in her left knee. Based on his review of the records and his examination of Claimant, Dr. Schmidt did not relate

7

Claimant's torn medial meniscus to the June 10, 2012 fall, but opined that she did sustain a contusion to her left knee. Instead, Dr. Schmidt concluded that Claimant's complex meniscus tear was not an acute injury, but was the result of degenerative changes, which was supported by the pre-operative and post-operative reports related to Dr. Feinstein's arthroscopic surgery and Claimant's total knee replacement surgery. (Id. at 69-70, 73-79, 82, 88-90.)

After considering this evidence, the WCJ found Claimant's testimony "basically credible," but found that the issue involved here was more of a legal issue concerning whether Claimant's left knee injuries were work-related. (WCJ Decision, Findings of Fact (FOF) ¶ 4.) The WCJ credited Dr. Feinstein's testimony and opinions regarding the right ankle injury being work-related. (Id. ¶ 22.) However, the WCJ did not credit his

> opinion that Claimant's work injury includes a torn medial meniscus with traumatic irritation of previously asymptomatic degenerative changes in her left knee that required a total knee replacement and that Claimant was restricted from doing the work she had been doing at [the grocery store] prior to her June 10, 2012, work injury[.]

(Id. ¶ 23.) In particular, the WCJ noted, *inter alia*, that Dr. Feinstein agreed that Claimant did not twist her knee when she fell, her weight could be a significant factor in aggravating the degenerative process in her left knee, and that it was possible Claimant could have a degenerative condition in one knee and not the other without there having been trauma. (Id. ¶ 23.) Instead, the WCJ credited Dr. Schmidt's testimony that the work-related injury to Claimant's left knee consisted of a contusion and that the torn medial meniscus, and related treatment and disability, were not work-related. (Id. ¶¶ 24, 26.) The WCJ pointed to Dr. Schmidt's discussion regarding Claimant's medical records, which "did not reveal

8

any physical changes consistent with a torn medial meniscus such as swelling and the test results for a torn medial meniscus were negative initially after the injury." (Id. ¶ 26.) The WCJ further noted that Dr. Schmidt's opinion was consistent with the operative reports revealing that Claimant's tear was a complex tear, which Dr. Schmidt opined was "a degenerative tear and not an acute tear." (Id.)

Based on these credibility determinations, the WCJ found that Claimant's work-related injuries "consisted of a torn Achilles tendon in her right ankle and a left knee contusion," and that Claimant had fully recovered from these injuries as of May 1, 2013. (Id. ¶¶ 27-28.) The WCJ denied the Review/Reinstatement Petitions because Claimant did not prove that

> the injury description should be amended to include a left knee injury resulting in the need for a total knee replacement and that Claimant's benefit[s] entitlement should be reinstated to total disability benefits during the time she was off work for the total knee replacement and partial disability benefits due to her inability to perform the number of hours at her concurrent employment that she was able to do prior to the work injury.

(WCJ Decision, Conclusions of Law (COL) ¶ 2.) The WCJ granted the Termination Petition because Employer had met its burden of proving that Claimant had fully recovered from her work-related injuries. (Id. ¶ 3.) Noting that Claimant acknowledged being paid all of the wage loss benefits she was owed up until she left work for the non-work-related knee replacement surgery, the WCJ "conclude[d] that Claimant is not entitled to any additional Workers' Compensation wage loss benefits" and that Employer was not responsible for any medical bills subsequent to May 1, 2013, or for any medical bills related to Claimant's left knee. (Id. ¶¶ 7-8.) Finding that Claimant had not prevailed in this matter, the WCJ denied reimbursement of her litigation costs. (Id. ¶ 9.)

9

Claimant appealed to the Board arguing that the WCJ's findings that supported the WCJ's denial of the Review/Reinstatement Petitions and the grant of the Termination Petition were not supported by substantial evidence. Claimant also asserted that she did prevail, in part, and, therefore, the WCJ erred in not awarding litigation costs. After reviewing the evidence and the WCJ's credibility determinations, the Board found no error in not amending the injury description to include the torn medial meniscus and awarding benefits based on that injury because the WCJ was free to credit Dr. Schmidt's testimony regarding the extent of Claimant's left knee injury and this testimony was consistent with Claimant's medical records. (Board Op. at 9-11.) The Board also recognized that the WCJ made a finding that the work injury included a left knee contusion, and so "[could not] disagree that the Review Petition was essentially granted in part, and . . . will modify the WCJ's order to that extent." (Id. at 11.) As for the Termination Petition, the Board held that Dr. Schmidt's credited testimony supported the conclusion that Claimant was fully recovered from the work-related right ankle injury and left knee contusion. (Id. at 10.) However, the Board held that the WCJ did err in terminating Claimant's benefits as of May 1, 2013, because Dr. Schmidt did not examine Claimant until July 26, 2013; accordingly, the Board modified the effective date of Claimant's full recovery to the latter date. (Id.) Finally, the Board disagreed with Claimant that she should receive litigation costs under Section 440(a) of the Act because Claimant did not establish that she was entitled to additional indemnity or medical benefits; thus, she received no financial benefit from this litigation. (Id. at 12 (citing Watson v. Workers' Comp. Appeal Bd.

10

(Special People in Northeast), 949 A.2d 949 (Pa. Cmwlth. 2008)).) Claimant now petitions this Court for review.[7]

Claimant first asserts that she is entitled to the reimbursement of her litigation costs because she prevailed in part on her Review Petition. Claimant argues that, because she established that the description of her work injury in the NCP was incorrect and should have included a left knee contusion, she prevailed and is entitled to the reimbursement of her litigation costs of $4,754.66 pursuant to Section 440(a) of the Act. Claimant notes that Employer could have acknowledged a left knee injury and, having not done so, forced Claimant to file a petition in order to establish that she did, in fact, sustain a left knee injury as a result of the June 10, 2012 fall. Claimant maintains that this matter is akin to that in Western Pennsylvania Hospital v. Workers' Compensation Appeal Board (Cassidy), 725 A.2d 1282 (Pa. Cmwlth. 1999), wherein the claimant successfully obtained an amendment to his NCP expanding the description of his work injury and was awarded litigation costs despite not prevailing on his reinstatement petition. (Claimant's Br. at 12.)

Employer responds that Claimant sought to add a specific injury to the NCP, a torn medial meniscus in her left knee, and was unsuccessful. Moreover, even though the NCP was amended to include a left knee contusion, Claimant received no additional indemnity or medical benefits as a result, nor did she assert any

---

[7] "Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434, 438 n.2 (Pa. Cmwlth. 2002).

entitlement to additional benefits. Therefore, Employer asserts, Claimant was not entitled to the reimbursement of her litigation costs.

Section 440(a) of the Act states, in pertinent part:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings[.]

* * *

77 P.S. § 996(a). "Litigation costs are warranted when a claimant is at least partially successful before a WCJ." Watson, 949 A.2d at 955. In order to be considered partially successful, a claimant must receive some financial benefit from the WCJ's award. Id. at 955-56. Thus, even where a WCJ rules in favor of a claimant on a minor matter, if "all of the matters at issue [are] finally determined in the employer's favor, *resulting in no financial benefit to the claimant*," the claimant is not successful and is not entitled to litigation costs under Section 440(a). Minicozzi v. Workers' Comp. Appeal Bd. (Indust. Metal Plating, Inc.), 873 A.2d 25, 31 (Pa. Cmwlth. 2005) (emphasis added) (citing Amoratis v. Workers' Comp. Appeal Bd. (Carolina Freight Carriers), 706 A.2d 368 (Pa. Cmwlth. 1998)); see also Watson, 949 A.2d at 955-56.

Here, Claimant was successful in her Review Petition to the extent that the description of her work-related injury in the NCP was amended to include a left knee contusion. However, this amendment did not result in any practical, quantifiable benefit to Claimant. As the Board observed in its opinion, "Claimant

12

does not assert an entitlement to any benefits arising from the granting of the Review Petition with respect to the left knee contusion." (Board Op. at 11 n.4.) Claimant does not argue that she received any particular medical treatment related to the left knee contusion or that she sustained any wage losses as a result of the left knee contusion. Rather, Claimant sought, through her Review/Reinstatement Petitions, the payment of her medical bills and total and partial disability benefits resulting from her torn medial meniscus and total knee replacement surgery. Having concluded that the torn medial meniscus and total knee replacement surgery were not work-related, the WCJ denied any award of benefits beyond what Employer had already paid to Claimant for her work-related right ankle injury. (COL ¶¶ 2, 7-8.) Accordingly, Claimant received no financial benefit by the amendment to the NCP and, therefore, there was no error in denying Claimant's request for litigation costs under Section 440(a). Watson, 949 A.2d at 955-56.

Western Pennsylvania Hospital does not require a different result. Contrary to Claimant's reading, that case involved only a review petition that was granted to amend a NCP to include a disc herniation, for which the claimant had surgery, and an award of additional benefits for scarring related to that surgery. W. Pa. Hosp., 725 A.2d at 1282-83. The issue in Western Pennsylvania Hospital was whether the claimant should be reimbursed for costs associated with materials obtained in anticipation of a hearing but that were not used because the employer stipulated at the hearing that the disc herniation was work-related and accepted liability for that injury. Id. at 1283-84. The employer argued that, because the materials were not used at a hearing, the costs associated with obtaining them were not reimbursable. Id. at 1284. We rejected this argument and instead held that because the issue concerning the disc herniation remained in dispute, the claimant had to be prepared

13

to litigate his claims at the hearing, notwithstanding the fact that the issue was finally settled when the employer stipulated to its liability at the hearing. Id. Thus, it was the amount of the litigation costs at issue in Western Pennsylvania Hospital, rather than the claimant's entitlement to those costs in the first instance. That is not the issue in the present matter and, therefore, Western Pennsylvania Hospital is inapposite.

Claimant next argues that the termination of her benefits was not supported by substantial evidence and, therefore, should be reversed. Claimant acknowledges that the WCJ is the sole arbiter of credibility and fact finder, but asserts that the WCJ should not have accepted Dr. Schmidt's testimony over Dr. Feinstein's testimony because the former's opinion relied significantly on the June 11, 2012 Concentra examination note. According to Claimant, the Concentra examination note: is hearsay which cannot support a finding of causation absent corroboration from other competent evidence, Walker v. Unemployment Compensation Board of Review, 367 A.2d 366 (Pa. Cmwlth. 1976); and misdiagnosed Claimant's right ankle injury. Claimant further argues that the WCJ should not have considered Claimant's weight because Claimant had been asymptomatic before the June 10, 2012 fall, despite her weighing the same previously. Claimant also contends that the WCJ erred in basing her credibility determinations on the fact that Dr. Feinstein "agreed" that Claimant's situation was the same as other patients who may have had degenerative changes in one, but not both knees. Claimant asserts that cumulative errors in the WCJ's rationale for crediting Dr. Schmidt's testimony over Dr. Feinstein's testimony warrant the conclusion that the WCJ's findings of fact are not supported by substantial evidence.

14

Employer replies that the WCJ's findings related to her credibility determinations are supported by substantial evidence, pointing to various portions of Dr. Feinstein's testimony that support the WCJ's reasons for not finding that testimony credible. (Employer's Br. at 16-17.) Moreover, Employer asserts that other evidence supports the WCJ's finding that Claimant's torn medial meniscus was not work-related, including that: Claimant did not complain about knee pain to Dr. Feinstein until two and one half months after the fall at work; Dr. Feinstein testified that the tear was a complex tear, which Dr. Schmidt indicated that, by definition, were degenerative in nature; and Claimant's medical records immediately following the injury did not reveal any symptoms that would be present with a trauma-induced tear. Employer observes that Dr. Schmidt could rely upon Claimant's medical records, including the Concentra examination note, to support his opinion as it would be something he customarily would rely upon to form that opinion. Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs.), 126 A.3d 394, 405 (Pa. Cmwlth. 2015). Employer contends, therefore, there was no error or abuse of discretion in finding Dr. Feinstein not credible regarding Claimant's knee injury and that the credited evidence supports the denial of the Review/Reinstatement Petitions with regard to that injury. Employer also asserts that the credited testimony supports the WCJ's grant of the Termination Petition.[8]

---

[8] Employer further argues that the Board erred in modifying the termination of Claimant's benefits from May 1, 2013 to July 26, 2013 because Dr. Feinstein examined Claimant on the former date and testified that Claimant was fully recovered from the right ankle injury as of that date. However, Employer, who was aggrieved by this modification, did not file a petition for review challenging the Board's modification and, therefore, has not preserved this issue for this Court's consideration.

15

There are three petitions at issue here: a Review Petition, a Reinstatement Petition, and a Termination Petition, each having a different burden of proof. Claimant's Review Petition sought to correct an inaccurate description of her existing injury, which is governed by the first paragraph of Section 413(a) of the Act, 77 P.S. § 771,[9] and Claimant bore the burden of proving "the existence of additional compensable injuries giving rise to corrective amendments." Cinram Mfg., Inc. v. Workers' Comp. Appeal Board (Hill), 975 A.2d 577, 581-82 (Pa. 2009). With regard to a reinstatement petition, Section 413(a) of the Act authorizes the reinstatement of disability benefits "upon proof that the disability of an injured employe has increased, decreased, [or] recurred [.]" 77 P.S. § 772. In a reinstatement situation, the claimant has the burden of proving that: (1) her "earning power is once again adversely affected by . . . her disability"; and (2) the disability is a continuation of the disability that arose from her original claim. Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom), 2 A.3d 548, 558 (Pa. 2010). Finally, in a termination proceeding, the employer bears the burden of proving that the claimant fully recovered from her work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury. Campbell v. Workers' Comp. Appeal Bd. (Antietam Valley Animal

---

[9] The first paragraph of Section 413(a) provides:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

16

Hosp.), 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). In denying Claimant's Review/Reinstatement Petitions for the torn left medial meniscus and granting Employer's Termination Petition, the WCJ relied upon Dr. Schmidt's testimony, which was credited over the conflicting testimony of Dr. Feinstein. Claimant asserts that the WCJ abused her discretion or committed an error of law in doing so, but, upon review of the record, we disagree.

When reviewing witnesses' testimony, "determinations as to the weight and credibility of conflicting medical testimony are solely for the WCJ as factfinder." Cittrich v. Workmen's Comp. Appeal Bd. (Laurel Living Ctr.), 688 A.2d 1258, 1259 (Pa. Cmwlth. 1997). A WCJ may "accept or reject the testimony of any witness, including medical witnesses, in whole or in part." Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.), 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). If supported by substantial evidence, a WCJ's findings are conclusive on appeal, despite the existence of contrary evidence. Cittrich, 688 A.2d 1260-61. Substantial evidence is such relevant evidence that a reasonable person "might accept as adequate to support a finding." York Terrace/Beverly Enter. v. Workmen's Comp. Appeal Bd. (Lucas), 591 A.2d 762, 764 n.5 (Pa. Cmwlth. 1991). Additionally, we should take all inferences drawn from the evidence in favor of the party prevailing before the WCJ. Krumins Roofing and Siding v. Workmen's Comp. Appeal Bd. (Libby and State Workmen's Ins. Fund), 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

We first address Claimant's contention that Dr. Schmidt could not rely on the Concentra examination note in rendering his opinion that Claimant's torn left medial meniscus was not related to the June 10, 2012 fall. It is well-settled that "[a] medical expert is permitted to base h[is] opinion on the medical reports of

17

other doctors, which the expert customarily relies upon in the practice of h[is] profession." Ingrassia, 126 A.3d at 405. Dr. Schmidt reviewed Claimant's medical records following the June 10, 2012 fall for evidence to support her claim that she sustained the torn medial meniscus in that fall. He testified that if Claimant had done so, there would have been swelling and effusion, "which you would clearly see within 24 hours" of the injury. (R.R. at 76.) No such evidence was recorded in the Concentra examination note, taken one day after the June 10, 2012 fall; rather, that examination of Claimant's left knee was "objectively normal" with "no swelling, deformity, effusion" and a normal gait and range of motion. (Id. at 75, 79, 189.) We discern no abuse of discretion or error of law in the WCJ's credibility finding based, in part, on Dr. Schmidt's consideration of a report made contemporaneously with Claimant's fall that supported his opinion that Claimant did not sustain a torn left medial meniscus as a result of the work fall. To the extent that Claimant challenges the accuracy of the Concentra examination note based on Concentra's misdiagnosis of her ankle injury, Dr. Schmidt did not rely on that portion of the record in rendering his opinion on Claimant's left knee. Moreover, we believe that any error in this regard goes to the weight of the note, and evidentiary weight determinations fall soundly within the WCJ's discretion. Cittrich, 688 A.2d at 1259.

We next address Claimant's other challenges to the WCJ's credibility determinations. With regard to Claimant's contention that her weight should not have been considered, Dr. Feinstein indicated that an individual's weight could be a significant factor in advancing the degeneration of a knee. (R.R. at 144.) Dr. Schmidt credibly testified that the type of tear here, a complex tear, by its nature is the result of degeneration, rather than acute trauma. (Id. at 77-79.) Because there

18

was no evidence of a traumatic injury beyond a knee contusion in the medical records contemporaneous to Claimant's June 10, 2012 fall, and Dr. Schmidt's opinion that the tear in Claimant's left knee was the result of the progression of Claimant's degenerative condition, we observe no error or abuse of discretion in the WCJ's considering potential causes of that degeneration in making her credibility determinations.

We, likewise, find no error or abuse of discretion in the WCJ's characterization of Dr. Feinstein's testimony as his "agreeing" that Claimant, like some of his other patients, could have degeneration in one knee, but not the other knee, in the absence of trauma. On cross-examination, Dr. Feinstein agreed, saying "[s]ure," that he has had patients that have had "degeneration in one knee and not the other absent any trauma," he did not know what accounted for that process, and this could "[j]ust [be] the way their body works, the way . . . it ages." (R.R. at 154-55.) Dr. Feinstein was then asked whether "that actually could be what happened in this particular case," to which he responded, "[a]nything's possible." (Id. at 155.) By answering "[a]nything's possible," (id.), Dr. Feinstein was "agreeing" that Claimant's situation *could* be the same as these other patients, which supports the WCJ finding in that regard. (FOF ¶ 23.)

Based on the credited evidence, Claimant sustained work-related injuries to her right ankle injury in the nature "of a torn Achilles tendon . . . and a left knee contusion." (FOF ¶ 27.) Both Dr. Schmidt and Dr. Feinstein opined that these injuries had resolved and Claimant no longer had any disability related to those injuries. (R.R. at 72, 81-82, 153-54; FOF ¶ 28; COL ¶¶ 5-6.) Accordingly, Employer met its burden of proof on the Termination Petition, and the WCJ properly terminated Claimant's workers' compensation benefits.

19

For the foregoing reason, the Board's Order is affirmed.


_____
**RENÉE COHN JUBELIRER,** Judge


Judge Cosgrove dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Luby,                                     :
                Petitioner         :
                                                :
        v.                              :   No. 499 C.D. 2016
                                                :
Workers' Compensation Appeal         :
Board (Valley Crest Nursing, d/b/a     :
Timber Ridge Health Care),                 :
              Respondent       :

## **O R D E R**

    **NOW**, December 28, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

                                           _____

                                       **RENÉE COHN JUBELIRER,** Judge