Ronald W. Harbaugh,            :
           Petitioner         :
                                 :   No.  29 C.D. 2020
              v.            :
                                 :   Submitted:  June 19, 2020
Workers' Compensation Appeal   :
Board (Barbush Rentals, Inc.),     :
           Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED:  October 27, 2020

        Ronald W. Harbaugh petitions for review of the December 13, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the determination of Workers' Compensation Judge David Weyl (WCJ) that Harbaugh is not entitled to benefits under the Workers' Compensation Act (Act).[1]  We affirm.

        The relevant facts, as summarized from the WCJ's findings, are as follows.  Harbaugh was employed by a car rental agency, Barbush Rentals, Inc. (Employer), as a driver.  His duties involved moving cars back and forth between airport parking lots and Employer's reconditioning shop.  On December 4, 2017, Harbaugh discovered damage to a car and went to the office of his supervisor, Zachary

---

[1] Act of June 2, 1915, P.L. 736, No. 338, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Soles, to discuss the problem. After he spoke with Soles about the car, he turned to leave Soles' office, took several steps, and then felt a "pop" in his left ankle, which caused severe pain. Soles came to Harbaugh's aid and helped him sit in an office chair, but Harbaugh's ankle soon became swollen, so Harbaugh called his sister to take him to the emergency room at Hershey Medical Center.

The emergency room staff took x-ray images of Harbaugh's ankle, provided him with crutches and a boot for stabilization, and discharged him. Harbaugh was referred to an orthopedist, Umur Aydogan, M.D. Analyzing Harbaugh's x-ray, Dr. Aydogan believed that Harbaugh had suffered an avulsion fracture at the insertion of the Achilles tendon to the calcaneus. Dr. Aydogan ordered an MRI to confirm, which revealed a 1.7-centimeter detachment from the insertion and a complete tear, which was more than 90% avulsed. (Dr. Aydogan Deposition at 12; Reproduced Record (R.R.) at 32a.) In simpler terms, Harbaugh's Achilles tendon was torn from his heel bone, taking a small piece of bone with it. Dr. Aydogan further determined that Harbaugh had insertional tendinitis that had been present prior to the detachment, and that he had a Haglund's deformity.[2] Dr. Aydogan noted additional potentially contributing factors, including the fact that Harbaugh is diabetic and that he had been taking antibiotics shortly before the rupture, both of which can affect tendons. Importantly, when asked in his deposition testimony whether Harbaugh's injury was caused by his work for Employer, Dr. Aydogan answered: "I can't comment on that." (Dr. Aydogan Deposition at 35; R.R. at 55a.) He further explained: "It can happen anywhere at any[ ]time. That is why these are called spontaneous ruptures." *Id.*

---

[2] In his deposition testimony, Dr. Aydogan explained that a Haglund's deformity is "an increased angle at the back side of the calcane[u]s which can be a prerequisite for the Achilles tendinitis." (Dr. Aydogan Deposition at 16; R.R. at 36a.)

Dr. Aydogan performed surgery on Harbaugh's ankle on December 12, 2017. Harbaugh was kept off work from that date until June 1, 2018. In June, Harbaugh was able to return to work on a limited basis.

On February 9, 2018, Harbaugh filed a claim petition against Employer, as well as a petition for penalties. The WCJ held several evidentiary hearings, and took Harbaugh's testimony on June 14, 2018. In addition to detailing the injury, Harbaugh explained that, before the event, he had parked a car in a tight space, and the car door had closed on his left ankle. He stated that there was no excruciating pain at that time, and he did not tell anyone about it. (Notes of Testimony (N.T.), 6/14/2018, at 11; R.R. at 78a.) Harbaugh recalled that his ankle started to feel "a little stiff" approximately 30 minutes later, but he did not feel the need to tell anyone. *Id.* According to Harbaugh, he then encountered the issue with the damaged car, went to talk to Soles about it, and then experienced the "pop" in his ankle as he exited Soles' office. On cross-examination, Harbaugh acknowledged a previous statement, in which he related that a doctor at the emergency room asked him whether anything had hit his ankle, and he told the doctor that car doors had closed on his ankle in the past, but that he did not remember it happening on that particular morning. However, Harbaugh testified that he told Soles about the car door closing on his ankle after the injury occurred. (N.T., 6/14/2018, at 34-35; R.R. at 101a-02a.)

Harbaugh additionally testified about previous injuries and his history of activities relating to them. Harbaugh had a prior work-related injury to his hip. He also was hit by a car in the 1970s, which injured his right leg and caused him to use his left leg more dominantly. Prior to his work with Employer, Harbaugh worked as a chef for approximately 20 years, which required him to stand often. Despite his previous

3

injuries, Harbaugh lived an active lifestyle, and enjoyed mountain biking, kayaking, walking, and running. (N.T., 6/14/2018, at 37-40; R.R. at 104a-07a.)

Employer presented Soles' testimony at a hearing on August 16, 2018. Soles confirmed that Harbaugh came into his office on the morning of December 4, 2017, to discuss an issue with a car, and that Harbaugh's injury occurred immediately after Harbaugh left the office. Soles testified that he heard a sound "almost like a snap of a finger." (N.T., 8/16/2018, at 9; R.R. at 127a.) Soles stated that, when he was speaking to Harbaugh in his office, Harbaugh was not walking abnormally and did not appear to be in physical pain. However, Soles explained that Harbaugh always walked with a limp, and he knew that Harbaugh had previous injuries. Soles did not recall Harbaugh saying anything about a car door closing on his ankle on the morning of the injury. (N.T., 8/16/2018, at 10-11; R.R. at 128a-29a.)

As for medical evidence, Harbaugh presented Dr. Aydogan's above-discussed deposition testimony. In opposition, Employer presented the deposition testimony of Lawrence Pollack, D.O., a board-certified orthopedic surgeon. Dr. Pollack performed an independent medical examination of Harbaugh on May 9, 2018, and reviewed Harbaugh's medical records. Dr. Pollack noted that Harbaugh mentioned that car doors had closed on his ankle in the past, but he did not say that it happened on the morning of the injury. (Dr. Pollack Deposition at 10; R.R. at 156a.) Dr. Pollack did not observe any reference to a car door closing on Harbaugh's ankle in any of the records that he reviewed. Moreover, Dr. Pollack opined that even if a car door closed on Harbaugh's ankle that morning, this would not cause a rupture of the sort that Harbaugh experienced. (Dr. Pollack Deposition at 13-14; R.R. at 159a-60a.) Dr. Pollack opined that Harbaugh had sustained a left insertional Achilles tendon rupture, and he agreed with Dr. Aydogan's assessment that Harbaugh exhibited a Haglund's

4

deformity. However, while Dr. Aydogan declined to comment on whether the rupture was caused by Harbaugh's work, Dr. Pollack directly stated that, to a reasonable degree of medical certainty, the rupture was not caused by or related to Harbaugh's employment.[3] Dr. Pollack concluded that it was not caused by any "injury, accident, or trauma." (Dr. Pollack Deposition at 17; R.R. at 163a.) He opined that it was merely a coincidence that the rupture occurred while Harbaugh was at work.

Following the close of evidence, the WCJ made findings of fact and conclusions of law. The WCJ credited Harbaugh's account of the injury itself and his description of his treatment and subsequent return to work. However, the WCJ rejected Harbaugh's "testimony that a door shut on his ankle that day or that he reported that to Mr. Soles at all as this is contrary to the history provided to four . . . different doctors and contrary to the testimony of Mr. Soles." (WCJ Op. at 7.) The WCJ credited Soles' testimony in its entirety.

With regard to the medical evidence, the WCJ reviewed the opinions of Dr. Aydogan and Dr. Pollack and, to the extent that their testimonies differed, the WCJ credited Dr. Pollack's testimony and rejected Dr. Aydogan's. *Id.* "However," the WCJ noted, "a careful review of the transcripts will show that their testimonies don't differ that much." *Id.* Dr. Aydogan and Dr. Pollack agreed as to the nature of the injury, that it required surgery, and that several preexisting factors contributed to it. They agreed

---

[3] Dr. Pollack explained further:

[Harbaugh's] problem is not a traumatic issue. His problem is that he has chronic deterioration or degeneration of his Achilles tendon secondary to his Haglund's deformity, and with microtrauma due to just walking, to that tendon with that Haglund's deformity, is what resulted in the Achilles tendon rupture. You do not need any trauma to rupture an Achilles tendon that has been going through that process for so long.

(Dr. Pollack Deposition at 19-20; R.R. at 165a-66a.)

5

that Harbaugh exhibited degeneration at the fracture site. They also agreed that Harbaugh had recovered to the point that he could return to work. Where they differed, the WCJ observed, was that Dr. Pollack repeatedly and expressly opined that Harbaugh's injury was not caused by his employment duties. Dr. Aydogan, by contrast, stated that he "could not comment" upon this matter. *Id.* The WCJ "credit[ed] the opinions of Dr. Pollack that the avulsion/fracture was not work related, because these opinions are supported by [Harbaugh's] history, the medical records, and diagnostic studies." *Id.* The WCJ therefore concluded that Harbaugh had failed to meet his burden to prove that he sustained a "work-related injury" on December 4, 2017. *Id.*[4] Accordingly, the WCJ denied and dismissed Harbaugh's claim petition and his petition for penalties.

Harbaugh appealed to the Board, asserting that the WCJ's decision was not supported by substantial evidence, and that his conclusion was erroneous as a matter of law. The Board affirmed. The Board correctly noted that credibility determinations are the exclusive prerogative of the WCJ, and that the WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. (Board Op. at 5 (citing *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995); *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994).) Because the WCJ accepted Dr. Pollack's testimony that the rupture of Harbaugh's Achilles tendon was not work-related, the Board concluded that the WCJ's conclusion was supported by substantial evidence. This conclusion was not legally erroneous, the

---

[4] As discussed further below, Section 301(c) of the Act, in relevant part, defines "injury" for purposes of workers' compensation as "an injury to an employe, regardless of his previous physical condition . . . arising in the course of his employment *and related thereto* . . . ." 77 P.S. §411(1) (emphasis added).

6

Board opined, because a workers' compensation claimant has the burden to establish a causal connection between the injury and the claimant's employment. Again because the WCJ accepted Dr. Pollack's testimony, and, in any event, because even Dr. Aydogan declined to comment upon any relation to Harbaugh's employment, Harbaugh failed to establish the requisite causal connection. *Id.* at 7 (citing *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997 (Pa. Cmwlth. 2007)). Finally, the Board concluded that the WCJ did not err in denying Harbaugh's petition for penalties, because entitlement to workers' compensation benefits is a precondition to an award of penalties. *Id.* (citing *Zuchelli v. Workers' Compensation Appeal Board (Indiana University of Pennsylvania)*, 35 A.3d 801 (Pa. Cmwlth. 2011)). Because Harbaugh was not entitled to benefits, the Board concluded that he also was not entitled to an award of penalties.

Harbaugh seeks this Court's review of the Board's decision, raising four issues for our consideration.[5] Harbaugh contends that the WCJ erred in denying his claim petition, in denying his petition for penalties, in failing to award him unreasonable contest attorney's fees, and in failing to award him his costs of litigation. However, because the issues concerning penalties, attorney's fees, and costs all depend upon Harbaugh's assertion that he should have prevailed upon the merits of his claim petition, the threshold issue is whether the WCJ erred in concluding that Harbaugh is not entitled to workers' compensation benefits.

Harbaugh argues that the WCJ and the Board applied an incorrect standard in determining whether Harbaugh sustained a work-related "injury" for purposes of the

---

[5] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *Murphy v. Workers' Compensation Appeal Board (Ace Check Cashing Inc.)*, 110 A.3d 227, 233 n.6 (Pa. Cmwlth. 2015) (quoting *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 227 n.5 (Pa. Cmwlth. 2008)) (internal quotation marks omitted).

7

Act. In its findings of fact, the WCJ related Dr. Pollack's opinion that the rupture to Harbaugh's Achilles tendon was not caused by an "injury, accident, or trauma." (WCJ Op. at 6.) Harbaugh argues that this led to an erroneous legal conclusion, because the Act's definition of "injury" does not require an "accident" or "trauma." (Harbaugh's Br. at 32.) In support, Harbaugh engages in a historical analysis of the Act, as recounted in our Supreme Court's decision in *Pawlosky v. Workmen's Compensation Appeal Board*, 525 A.2d 1204 (Pa. 1987), from which Harbaugh quotes extensively. The thrust of this discussion is that an earlier version of the Act provided benefits only for injury or death resulting from an "accident," but the 1972 amendments to the Act[6] removed the term "accident" and replaced it with "injury." (Harbaugh's Br. at 28-29 (quoting *Pawlosky*, 525 A.2d at 1208-09).) The common understanding of the word "injury," Harbaugh emphasizes, "includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability." *Id.* at 29 (quoting *Pawlosky*, 525 A.2d at 1209). Harbaugh thus argues that the WCJ erred by purportedly requiring him to prove that the rupture of his Achilles tendon was caused by an "injury, accident, or trauma." *Id.* at 32.

Harbaugh further challenges the WCJ's conclusion, based upon the medical evidence, that the rupture was not "caused by" Harbaugh's work duties. *Id.* at 36. Because the rupture occurred while Harbaugh was performing his "normal work duties," Harbaugh contends that this satisfied the statutory definition of an injury "arising in the course of his employment and related thereto." *Id.* Harbaugh argues that, "[b]y adopting the 'caused by' standard in place of the 'arising in the course of his employment and related thereto' standard, the WCJ reintroduced the requirement of an 'accident' or 'trauma' to make an injury compensable." *Id.* Accordingly, because

---

[6] Act of March 29, 1972, P.L. 159, No. 61.

8

he believes it is unnecessary to establish whether an injury was "caused by" one's employment, Harbaugh suggests that it was "legally irrelevant" that Dr. Aydogan declined to offer an opinion as to work-related causation. *Id.*

Harbaugh has misconstrued both the record and the law. Contrary to Harbaugh's assertion, the WCJ did not require him to establish an "injury, accident, or trauma" as a prerequisite to obtaining workers' compensation benefits. Rather, the finding of fact of which Harbaugh complains merely described a portion of Dr. Pollack's testimony, alongside the WCJ's summary of the testimonies of every other witness. The WCJ did not base his conclusion upon the "injury, accident, or trauma" language. Rather, the WCJ determined that Harbaugh did not suffer a "work-related injury" because he credited Dr. Pollack's express testimony that the rupture was not caused by Harbaugh's work duties, and, moreover, Dr. Aydogan refused to comment upon this dispositive inquiry. (WCJ Op. at 7.) Thus, a substantial portion of Harbaugh's argument to this Court is premised upon a mischaracterization of the WCJ's decision.

To the extent that Harbaugh asserts error in the WCJ's application of a causal framework to assess whether the injury was work-related, Harbaugh's position is contradicted by voluminous precedent. Section 301(c) of the Act defines "injury" for purposes of workers' compensation as "an injury to an employe, regardless of his previous physical condition . . . arising in the course of his employment *and related thereto* . . . ." 77 P.S. §411(1) (emphasis added). Longstanding precedent provides that "the claimant has the burden of proving a causal relationship between a work-related incident and his alleged disability." *Lewis v. Workmen's Compensation Appeal Board*, 498 A.2d 800, 802 (Pa. 1985). Moreover, our Supreme Court has held:

> Where there is no obvious causal connection between an injury and the alleged cause, that connection must be

9

established by unequivocal medical testimony. Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Id.* (citations omitted). This Court consistently requires a showing of a causal relationship between an injury and a work-related cause, and follows *Lewis'* directive that, where such causal connection is not "obvious," it must be established through "unequivocal medical testimony." *See*, *e.g.*, *Frankiewicz v. Workers' Compensation Appeal Board (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017); *Frog, Switch & Manufacturing Co. v. Workers' Compensation Appeal Board (Johnson)*, 106 A.3d 202, 208 n.6 (Pa. Cmwlth. 2014); *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011); *Calex, Inc. v. Workers' Compensation Appeal Board (Vantaggi)*, 968 A.2d 822, 826 (Pa. Cmwlth. 2009); *Merchant v. Workers' Compensation Appeal Board (TSL, Ltd.)*, 758 A.2d 762, 769-70 (Pa. Cmwlth. 2000).

Harbaugh, then, faces multiple insurmountable hurdles in this appeal. First, the WCJ expressly credited Dr. Pollack's testimony in which he opined that the rupture to Harbaugh's Achilles tendon was not caused by his work for Employer. (WCJ. Op. at 7.) "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). The WCJ explained the basis for his credibility determination with regard to Dr. Pollack's testimony, and we find no grounds upon which to suggest that this finding was arbitrary

10

or capricious. Thus, we too must accept Dr. Pollack's opinion that the rupture of Harbaugh's Achilles tendon was not caused by his work duties.

Moreover, even if Harbaugh could overcome the WCJ's unfavorable credibility finding, he still would be unable to satisfy his burden to prove that his injury was work-related. Because the medical evidence all suggested that the rupture to Harbaugh's Achilles tendon was spontaneous and could have happened anywhere, there was no "obvious causal connection" to Harbaugh's employment. *Lewis*, 498 A.2d at 802. Thus, Harbaugh was required to establish such causation through "unequivocal medical testimony." *Id.* Harbaugh's expert, Dr. Aydogan, declined to offer any opinion on this critical matter, stating that he "can't comment" on whether the rupture was caused by any of Harbaugh's work duties. (Dr. Aydogan Deposition at 35; R.R. at 55a; WCJ Op. at 7.) The medical testimony on the necessary causation, thus, fell short of the "unequivocal" requirement. Indeed, Dr. Aydogan provided no opinion on the matter at all, let alone an unequivocal one.

Finally, as a matter of statutory interpretation, we must reject Harbaugh's contention that his injury was work-related simply because he was at work when it occurred. (Harbaugh's Br. at 37 ("[T]he fact that [Harbaugh] was four or five steps from his [s]upervisor's office when his Achilles tendon ruptured fulfills the necessary 'related thereto' requirement.").) Again, the Act defines an "injury" for purposes of workers' compensation as one "arising in the course of his employment *and* related thereto . . . ." 77 P.S. §411(1) (emphasis added). The fact that Harbaugh was on Employer's premises and performing his normal work duties establishes that he was "in the course of his employment." *Id.* However, if these same facts simultaneously satisfied the "related thereto" requirement with no inquiry into work-related causation being necessary, then the statutory language would be superfluous. In construing a

11

statute, we must presume "that the legislature did not intend any statutory language to exist as mere surplusage." *Berner v. Montour Township Zoning Hearing Board*, 217 A.3d 238, 248 (Pa. 2019) (quoting *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018)).

For all of these reasons, we conclude that the WCJ did not err in denying Harbaugh's claim petition, and that the Board did not err in affirming the WCJ's decision. Necessarily, then, Harbaugh is unable to establish that he was entitled to an award of penalties, attorney's fees, or costs. Concerning penalties under section 435 of the Act, 77 P.S. §991,[7] we have held that "a precondition to the imposition of penalties is the determination that a claimant is entitled to workers' compensation." *Zuchelli*, 35 A.3d at 807 n.5 (citing *Wyche v. Workers' Compensation Appeal Board (Pimco)*, 706 A.2d 1297 (Pa. Cmwlth. 1998)). Similarly, "an award of unreasonable contest attorney fees is not appropriate where, as here, [c]laimant did not prevail in whole or in part on [his] claim petition." *Id.* (citing *Watson v. Workers' Compensation Appeal Board (Special People in Northeast)*, 949 A.2d 949 (Pa. Cmwlth. 2008); *Amoratis v. Workers' Compensation Appeal Board (Carolina Freight Carriers)*, 706 A.2d 368 (Pa. Cmwlth. 1998)). Finally, "a claimant must prevail on the contested issue in order to be awarded litigation costs." *Jones v. Workers' Compensation Appeal Board (Steris Corp.)*, 874 A.2d 717, 721 (Pa. Cmwlth. 2005). Because Harbaugh failed to meet his burden to establish that his injury was related to his employment, he is not entitled to workers' compensation benefits and, thus, is not entitled to an award of penalties, attorney's fees, or litigation costs.

---

[7] Added by the Act of February 8, 1972, PL 25.

The order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald W. Harbaugh,                     :
              Petitioner              :
                                          :   No. 29 C.D. 2020
                v.                    :
                                            :
Workers' Compensation Appeal           :
Board (Barbush Rentals, Inc.),          :
              Respondent            :

## *ORDER*

AND NOW, this 27ᵗʰ day of October, 2020, the order of the Workers'
Compensation Appeal Board is AFFIRMED.

 

 

                                         _____
                                         PATRICIA A. McCULLOUGH, Judge