Michael MINICOZZI, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (INDUSTRIAL METAL PLATING, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2005.

Decided April 13, 2005.

Irving L. Abramson, Radnor, for petitioner.

Randy T. Burch, Reading, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this workers' compensation case, the claimant did not respond to an offer of modified, light duty work, and the parties contested whether he could perform it. Michael Minicozzi (Claimant) now petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the grant of Industrial Metal Plating, Inc.'s (Employer) petition to modify, and reversing an award of litigation costs. We affirm the grant of the modification petition; however, because the Claimant successfully delayed the onset of the modification, we reverse the denial of litigation costs.

Claimant worked in the maintenance department of Employer's plant. In June 2001, he sustained a work-related low back injury. Employer recognized the injury.

Approximately a year-and-a-half later, Employer filed a modification petition alleging it offered Claimant part-time, light-duty work within his restrictions which he

unreasonably refused. Claimant denied the material allegations.

Hearings ensued before a Workers' Compensation Judge (WCJ). In support of its modification petition, Employer presented the deposition testimony of Dr. S. Ross Noble (Employer's Physician), who is board-certified in physical medicine. Employer's Physician testified Claimant suffered a low back injury for which he underwent surgery. He testified Claimant was subsequently prescribed several pain medications. Based on Claimant's history, medical records and a physical examination, Employer's Physician opined Claimant was not fully recovered from the work injury. He opined, however, Claimant could perform sedentary work with a ten-pound lifting restriction. Employer's Physician opined Claimant could initially return to light duty work for two hours per day, gradually increasing his work day by an hour each day until he reached a full eight-hour day. Employer's Physician reviewed the job description for a "racking machine helper," the position offered to Claimant by Employer, and opined Claimant could perform the position despite taking pain medication.

Employer also presented the testimony of Jamey Maack, its plant manager (Employer's Plant Manager). Employer's Plant Manager explained that Employer offered Claimant a modified position as an assistant to the "racking machine operator" by letter dated September 18, 2002. He testified the position would require Claimant to place aluminum parts weighing less than one pound on a rack. He testified Claimant could perform the job by standing or sitting on a stool. Employer's Plant Manager further testified Claimant could begin the modified position by working two hours per day, gradually increasing his work day by an hour each day until he reached a full eight-hour day.

In addition, Employer presented the testimony of Darlene Wolfe, its personnel manager (Employer's Personnel Manager). Employer's Personnel Manager testified she sent Claimant a letter on September 18, 2002, informing him there was an available position that Employer's Physician approved as within his restrictions. She testified the letter did not include a job description, but indicated the job offered was a light-duty, modified position. Employer's Personnel Manager testified Claimant did not respond to the job offer. She further testified, as of the date of her March 26, 2003 deposition, Claimant and his attorney knew of the job offer and the specific duties required for the modified position. Employer's Personnel Manager explained that she advised Claimant's counsel the offered position remained available as of the date of her deposition.

In opposition, Claimant testified he received a letter on September 20, 2002, offering him a position within the restrictions set by Employer's Physician. He testified the letter did not include a description of the position. However, Claimant testified he was familiar with the duties required for the racking helper position as of the date of his hearing testimony in January 2003. Claimant testified he was unable to perform any position in Employer's facility because he continued to experience severe pain, and was taking several pain medications that caused drowsiness.

Claimant also presented the testimony of Dr. Kenneth Izzo (Claimant's Physician), who is board-certified in physical medicine and rehabilitation and electrodiagnostic medicine. Based on Claimant's history, medical records and a physical examination, Claimant's Physician opined Claimant could not return to work for Employer in any position. After reviewing the job description for the racking helper

position, Claimant's Physician opined Claimant was incapable of performing the required duties.

The WCJ accepted as credible the testimony of all of Employer's witnesses and rejected the testimony of Claimant and Claimant's Physician. The WCJ determined Employer offered Claimant modified work within his physical restrictions as of March 26, 2003, when Claimant "was aware not only of the specific job duties, but also that the job was available...." WCJ Op., Finding of Fact (F.F.) No. 9. The WCJ further determined Claimant did not attempt the job offered.

Although the Employer sought modification as of the original job offer of September 18, 2002, the WCJ granted Employer's modification petition as of March 26, 2003, The effective date of the modification was the basis for an award of litigation costs. Specifically, the WCJ determined Claimant was entitled to litigation costs because he partially succeeded in the litigation by delaying the onset of the modification. Both parties appealed to the Board.

The Board affirmed the WCJ's decision to modify benefits. However, it reversed the WCJ's award of litigation costs because Claimant did not prevail before the WCJ. Claimant now appeals to this Court.

■ On appeal,[1] Claimant argues the WCJ erred in: (i) crediting Employer's Physician's testimony that Claimant could perform the modified duty position; and (ii) failing to issue a reasoned decision. Claimant also contends the Board erred in reversing the WCJ's award of litigation costs.

Generally, when an employer seeks to modify benefits, the four pronged analysis under *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), requires:

1.   The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2.   The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3.   The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4.   If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380 (emphasis added).

■ Claimant first asserts the WCJ erred in crediting Employer's Physician's testimony that he could perform the modified position. Specifically, he argues Employer's Physician's testimony is unreliable because he did not cite any support for his opinion that Claimant could perform the modified position despite taking pain medications.

■ The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164 (Pa. Cmwlth.2003). The WCJ, as fact-finder, may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *McNulty v. Workers' Comp. Appeal Bd. (McNulty Tool & Die)*,

---

1.   Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 533 Pa. 461, 626 A.2d 94 (1993).

804 A.2d 1260 (Pa.Cmwlth.2002). We are bound by the WCJ's credibility determinations. *Lead v. Workers' Comp. Appeal Bd. (Sexton)*, 796 A.2d 431 (Pa.Cmwlth.2002).

Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Delaware County v. Workers' Comp. Appeal Bd. (Baxter Coles)*, 808 A.2d 965, 969 (Pa.Cmwlth.2002) (citing *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prod., Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998)). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. *Laird v. Workmen's Comp. Appeal Bd. (Michael Curran & Assoc.)*, 137 Pa.Cmwlth.206, 585 A.2d 602 (1991). If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Grabish v. Workmen's Comp. Appeal Bd. (Trueform Found.)*, 70 Pa.Cmwlth.542, 453 A.2d 710 (1982). This Court cannot, nor will we, consider the existence of other testimony that might support findings different from those found by the WCJ. *Vitelli v. Workmen's Comp. Appeal Bd. (St. Johnsbury Trucking Co.)*, 157 Pa.Cmwlth.589, 630 A.2d 923 (Pa.Cmwlth.1993).

Here, the WCJ specifically determined:

[Employer's Physician] reviewed the modified job called racking machine helper and believed that the Claimant could return to this job. [Employer's Physician] was also of the opinion that the Claimant was able to perform this job taking the medications that he was prescribed. [Employer's Physician's] testimony is found to be credible because he has numerous other patients in similar circumstances to the Claimant's and they are capable of returning to work in this type [of] capacity.

F.F. No. 3. Employer's Physician's opinion that Claimant could perform the modified position despite taking pain medications was based on his professional experience treating other similarly situated patients. Reproduced Record (R.R.) at 211a–212a. We reject Claimant's argument that Employer's Physician's failure to cite specific authority in support of this opinion renders his opinion unreliable. This argument challenges the weight afforded Employer's Physician's testimony, which is a matter reserved solely for the WCJ as fact-finder. *Waldameer Park, Inc.* Because the WCJ's determination that Claimant could perform the modified duty position is supported by Employer's Physician's testimony, R.R. at 207a–212a, we cannot disturb it. *Grabish.*

Claimant next asserts the WCJ erred in failing to issue a reasoned decision because he failed to set forth a sufficient basis for rejecting Claimant's Physician's testimony. Again, we disagree.

The "reasoned decision" requirement is found in Section 422(a) of the Workers' Compensation Act (Act).[2] That Section states, in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

[WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. . . . The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

In *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 574 Pa. 61, 828 A.2d 1043 (2003), our Supreme Court considered the proper construction of Section 422(a)'s reasoned decision requirement in a case with conflicting evidence. In considering what constitutes an adequate explanation for resolving conflicting testimony, the Court distinguished between live testimony and deposition testimony. Specifically, the Court stated:

> In a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately reasoned.

*Id.* at 77, 828 A.2d at 1053. Where witnesses provide conflicting testimony by way of deposition, however, a WCJ must articulate some objective basis for his credibility determination. *Id.* The *Daniels* Court further explained:

> [T]here are countless objective factors which may support the decision to accept certain evidence while 'rejecting or discrediting competent [conflicting] evidence.' For example, expert witness's opinion may be based upon erroneous factual assumptions . . . or an expert may have had less interaction with the subject . . . or the interaction was in a less timely fashion . . . or the expert may betray a bias or interest in the matter. . . . In addition, an expert wit-

ness may be unqualified or less qualified than the opposing party's expert; or *may be impeached with inconsistencies or contradictions in his or her testimony* or reports; or may be impeached in some other convincing fashion.

*Id.* at 78, 828 A.2d at 1053 (emphasis added) (citations omitted).

Here, the WCJ rejected Claimant's Physician's opinion on the grounds his opinion was internally inconsistent. F.F. No. 6. More specifically, although Claimant's Physician opined Claimant was incapable of performing sedentary work, the WCJ noted this statement was inconsistent with the results of a functional capacity evaluation Claimant's Physician performed on Claimant. *Id.* The WCJ's objective reason for his credibility determination is adequate to satisfy the requirements articulated in *Daniels*. Indeed, the WCJ's reason for rejecting Claimant's Physician's testimony here is among those specifically identified by the Court in *Daniels*, i.e., an inconsistency in Claimant's Physician's testimony. Consequently, this argument fails.

■■■ As a final issue, Claimant argues the Board erred in reversing the WCJ's award of $3623.06 in litigation costs.[3] Specifically, he asserts, although the WCJ granted Employer's modification petition, the WCJ modified benefits effective at a later date than that sought by Employer in its petition. As a result, Claimant contends, he was partially successful in the litigation and, therefore, he is entitled to litigation costs. We agree.

Section 440(a) of the Act, which permits an award of litigation costs, states, in relevant part:

---

3. The WCJ specifically found that Employer raised a reasonable contest. F.F. 13. Therefore, Claimant does not recover his attorney's fee. The issue of attorney's fee is not part of this appeal.

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, *the employe ... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded,* in addition to the award for compensation, *a reasonable sum for cost incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings ....*

77 P.S. § 996 (emphasis added).

In support of its decision to reverse the award of litigation costs, the Board relied on *Amoratis v. Workers' Comp. Appeal Bd. (Carolina Freight Carriers),* 706 A.2d 368 (Pa.Cmwlth.1998). *Amoratis,* however, is distinguishable. There, the employer filed several petitions, including petitions for supersedeas, to modify, and to suspend. The WCJ modified the claimant's benefits to zero as of the date requested by the employer, but suspended benefits four months after the date sought by employer. Based on his disposition of the modification petition, however, the WCJ noted his suspension order was moot. Nevertheless, the WCJ awarded litigation costs on the grounds the claimant partially succeeded by prevailing on the supersedeas request and by delaying the onset of the suspension. On appeal, we determined the award of litigation costs was improper as all the matters at issue were finally determined in the employer's favor, resulting in no financial benefit to the claimant.

Here, unlike in *Amoratis,* Claimant was partially successful because he delayed the onset of the modification for a significant period during which he was entitled to benefits. During the period of delay, Claimant received over 26 weeks of benefits totaling over $12,000.00, unlike the *Amoratis* claimant who delayed modification during a period when his benefit rate was zero. Here, Claimant achieved a practical, quantifiable benefit as a result of his defense to the modification petition. Because Claimant achieved this financial benefit, he partially succeeded before the WCJ, and, therefore, is entitled to litigation costs. As a result, we reverse that portion of the Board's order denying Claimant litigation costs.

Based on the foregoing, we affirm in part and reverse in part.

### ORDER

AND NOW, this 13th day of April, 2005, the order of the Workers' Compensation Appeal Board is **AFFIRMED in part and REVERSED in part.** The portion of the Board's order affirming the WCJ's grant of Industrial Metal Plating, Inc.'s modification petition is **AFFIRMED.** The portion of Board's order denying Claimant litigation costs is **REVERSED** so as to award litigation costs to Michael Minicozzi.