# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elisa McKee, :
                Petitioner :
                :
         v. : No. 1626 C.D. 2017
                : Submitted: March 16, 2018
Workers' Compensation Appeal :
Board (Geisinger Medical Center), :
                Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: June 20, 2018

Elisa McKee (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied her petition to enlarge the scope of her work injury. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant did not prove that her right knee work injury aggravated her preexisting osteoarthritis. Discerning no merit to Claimant's assertion that the WCJ erred in discrediting her expert's opinion on causation, we affirm.

Claimant worked at Geisinger Health System (Employer) as a nursing assistant. On August 26, 2013, she sustained a work-related injury while moving a patient. On September 19, 2013, Employer issued a medical only notice of compensation payable (NCP) describing the injury as "right knee – sprain – moving patient from wheelchair to stretcher." Certified Record (C.R.) Item No. 31 at 1.

Thereafter, Employer amended the NCP as follows: "right knee – meniscus tear – moving a patient from wheelchair to stretcher." C.R. Item No. 32 at 1.

On July 17, 2015, Claimant filed a review petition to amend the description of the injury in the NCP to include an aggravation of her osteoarthritis, which required a replacement of her right knee. Reproduced Record at 2a (R.R. __). Employer filed an answer denying the averments in the review petition.

Before the WCJ, Claimant testified about the work incident, explaining that she twisted her right knee while moving a patient from a wheelchair. Notes of Testimony, 8/31/2015, at 27; R.R. 36a. She experienced immediate pain. Claimant began treating with Daniel Feldmann, M.D., who performed arthroscopic surgery in October 2013, followed by a total knee replacement in January 2014.

Regarding her prior knee issues, Claimant testified that she injured her right knee in high school, which required arthroscopic surgery. In 1986, she again injured her right knee, which required surgery. In 1995, she developed a ligament problem that also required surgery. Until her work injury in 2013, she experienced no other right knee problems.

Claimant testified about her ongoing issues with her knee. She stated that her knee buckles two to three times a day, and she experiences swelling and pain that starts in the knee and shoots down her leg.

Claimant also offered the deposition testimony of Dr. Feldmann, a board certified orthopedic surgeon. Dr. Feldmann testified that his colleague, Dr. Brayford, referred Claimant to him for possible surgical intervention. Upon referral, Dr. Feldmann reviewed Claimant's x-ray and magnetic resonance imaging (MRI) scan and observed that she had "[p]rimarily an arthritic scenario, but also what

2

appeared to be a degenerative type of meniscus tear[]" in her right knee. R.R. 74a. He concluded that Claimant suffered from a meniscus tear and degenerative osteoarthritis. *Id.* at 76a.

Dr. Feldmann performed an arthroscopic debridement to remove the meniscal tissue. When that did not resolve Claimant's pain, he tried injection therapy and physical therapy. Finally, Dr. Feldmann performed a knee replacement on Claimant. He explained:

> I think it's a very subjective thing on the patient's part in terms of how much pain they're [sic] having, you know, relative to their [sic] knee or whatever joint we're talking about. She certainly had arthritis of a – of a mechanical level or an actual macro level that you can look and can see a degenerative knee. So given just the findings on her knee arthroscopy, let alone her X-rays and MRI, one would look at those studies and say that she would be a candidate for a knee replacement.

*Id.* at 82a.

Dr. Feldmann opined that Claimant's work injury aggravated her osteoarthritis, explaining as follows:

> [Claimant] had knee arthritis, … aggravated it at work during a twisting injury that led to a knee scope, that led to a failure of conservative management, that led to the patient and myself to conclude that the only thing further to do if she wanted to have a better functioning knee and a better quality of life would have been at that point in time to decide on a knee replacement.

*Id.* at 88a-89a. When asked whether a twisting injury could cause asymptomatic arthritis to become symptomatic, Dr. Feldmann responded that it was "possible[,]" explaining:

> it's actually a frequent occurrence where we see patients that have what appears to be a minor injury or an event, and then

3

when we do the workup we see significant arthritis. So logic would tell you that when you see that much arthritis on an x-ray or an MRI, patients must have been having some sort of something. You know, whether or not they're not truthful with me at the time I initially see them, whether or not the symptoms are there but not really that significant to slow them down, it's anybody's guess. But it's a common occurrence for me in my practice to see a patient that has arthritis when we do the workup but really a very minimal type of injury.

*Id.* at 78a. On cross-examination, Dr. Feldmann acknowledged that a total knee replacement is performed only where the patient has severe or end stage osteoarthritis in her knee. It is not appropriate treatment for a knee sprain or a torn meniscus.

Employer presented the deposition testimony of John Nolan, M.D., who is board certified in orthopedic surgery and sports medicine. After examining Claimant and reviewing her medical records, Dr. Nolan concluded that "she had a knee replacement for the same reason almost everyone else does, and that is, she had severe arthritis in the knee." R.R. 47a. He testified as follows:

My initial impression was that she had a sprain to the knee. An initial pattern of treatment would be rest, maybe crutches, maybe a light weight knee brace, maybe an injection. You don't do a knee replacement for a knee sprain.

So certainly a period of time of activity modification and what I just mentioned would be reasonably attributed to the work injury, but the knee replacement was something that was as a result of a well documented, long-standing, pre-existing arthritic condition.

R.R. 47a.

Dr. Nolan opined that Claimant's work injury did not aggravate her preexisting osteoarthritis. He explained:

4

[A]ggravation, as it's used medically/legally, my understanding is it's a material worsening of a condition. There's no evidence that that occurred.

Generally people that have that amount of swelling have intermittent episodes of swelling. Certainly she may have gotten more swelling after she twisted her knee. I certainly wouldn't doubt that and, like I said, if somebody had injected her knee and put her on crutches and gave her a brace for a period of time to quiet it down and get her back to her baseline, that certainly would be reasonable and attributable to the work event.

R.R. 48a.

The WCJ concluded that Claimant did not prove that the work injury aggravated her preexisting osteoarthritis and necessitated a knee replacement. The WCJ explained that early in the proceeding, he informed counsel that the principal issue was whether Claimant's work injury was a substantial contributing factor in her knee replacement. The WCJ found Dr. Feldmann's opinion did not explain how the sprain aggravated Claimant's arthritis. Specifically, the WCJ explained as follows:

[T]here is no credible explanation of any biomechanical, biochemical, tissue, or cellular changes in Claimant's knee that credibly explains why Claimant's previously asymptomatic arthritic condition became symptomatic creating Claimant's symptoms that led to her total knee replacement or that credibly supports Dr. Feldmann's opinion that the work injury aggravated the underlying osteoarthritis leading to the total knee replacement. Dr. Feldmann's testimony on this issue is rejected as not credible.

WCJ Decision, 10/12/2016, at 11-12, Finding of Fact No. 61. Consistent with his findings, the WCJ denied Claimant's review petition.

Claimant appealed to the Board, which affirmed. The Board discerned no error in the WCJ's decision to reject Dr. Feldmann's opinion on causation.

5

Further, it rejected Claimant's contention that the WCJ erred in directing the parties to offer precise evidence on the claim of aggravation. The Board stated that the "WCJ was simply looking for an explanation as to the basis underlying Dr. Feldmann's opinion, and [the WCJ] expressed the absence of such a sufficient explanation in the terms delineated." Board Adjudication, 10/4/2017, at 9.

On appeal,[1] Claimant raises three issues,[2] which, for purposes of clarity, we treat as one: whether the WCJ erred in finding that Claimant's evidence did not prove an aggravation injury. Specifically, Claimant contends that the WCJ erred in requiring her to present evidence of biomechanical, biochemical, tissue, or cellular changes in her knee as the threshold to proving an aggravation.

In a review petition, "[t]he claimant must establish that [the] injury was sustained during the course and scope of employment and is causally related thereto." *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007). "When the connection between the injury and the alleged work-related cause is not obvious, it is necessary to establish the cause by unequivocal medical evidence." *Id.*

An aggravation of a preexisting condition constitutes a compensable work injury. To establish a compensable aggravation injury, "the medical evidence [must] establish that the injury *materially* contributed to the disability rather than the

---

[1] "This Court's review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, [and] whether constitutional rights were violated or an error of law was committed." *CVA, Inc. v. Workers' Compensation Appeal Board (Riley)*, 29 A.3d 1224, 1227 n.4 (Pa. Cmwlth. 2011).

[2] They are: (1) the WCJ erred in requiring evidence of biomechanical, biochemical, tissue or cellular changes in Claimant's knee; (2) the WCJ erred in basing his credibility determination of Claimant's treating orthopedic surgeon on the "lack of change" evidence; and (3) the WCJ's decision was not based on substantial evidence or reasoned and was arbitrary and capricious. Claimant Brief at 4.

6

disability resulted from the natural progress of a pre-existing condition." *Miller v. Workmen's Compensation Appeal Board (Pocono Hospital)*, 539 A.2d 18, 20-21 (Pa. Cmwlth. 1988) (emphasis added). "Whether or not the … incident materially contributed to the disability is a question of fact to be determined by the WCJ." *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 (Pa. Cmwlth. 1999).

"The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned[,]" and this Court is "bound by the WCJ's credibility determinations." *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005). Additionally, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Id.* at 29. "We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings[,]" and "[i]f the record contains such evidence, the findings must be upheld[.]" *Id.* With these principles in mind, we consider Claimant's appeal.

The WCJ held that Claimant did not meet her burden because Dr. Feldmann did not offer a credible, detailed explanation of the aggravation claim. Dr. Feldmann testified that Claimant's twisting injury at work "could aggravate" the arthritis. R.R. 79a. When asked how a twisting injury could cause asymptomatic osteoarthritis to become symptomatic, Dr. Feldmann stated that it was not uncommon to treat a minor injury "and then when we do the workup we see significant arthritis…." *Id.* at 78a. Simply, his response did not provide the

7

explanation. Likewise, Dr. Feldmann did not identify any medical evidence, such as Claimant's x-ray or MRI, that would provide this explanation.

Claimant had the burden to establish, through credible medical evidence, that the work injury materially contributed to an aggravation of her preexisting injury. She did not do so because the WCJ did not find Dr. Feldmann's testimony credible.

Contrary to Claimant's contention, the WCJ did not impose an inappropriate burden of proof upon her. The WCJ rejected Dr. Feldmann's causation opinion, in part, because it did not identify the biomechanical, biochemical, tissue, or cellular changes in Claimant's knee that made her asymptomatic arthritic condition become symptomatic. Claimant's disagreement with this credibility finding is not the basis for reversing the Board.

Finally, Claimant argues that she only needed to introduce evidence of an asymptomatic condition becoming symptomatic as a result of a work injury to meet her burden. In support, she directs the Court to precedent in *US Airways v. Workers' Compensation Appeal Board (Robinson)* (Pa. Cmwlth., No. 1602 C.D. 2010, filed June 30, 2011) (unreported);[3] *Lewistown Hospital v. Workmen's Compensation Appeal Board (Kuhns)*, 683 A.2d 702 (Pa. Cmwlth. 1996); and *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board*, 377 A.2d 1007 (Pa. Cmwlth. 1977). In each of these cases, the claimant had a preexisting condition that was aggravated by a work injury. Each claimant introduced credible, expert medical testimony that the preexisting condition was

---

[3] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

8

aggravated by the work incident. By contrast, Claimant's medical expert was not found credible on causation. Thus, *US Airways, Lewistown Hospital* and *American Refrigerator Equipment Company* are all distinguishable from the case at bar.

For the reasons stated above, the Court affirms the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

Judge McCullough did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elisa McKee,                  :
        Petitioner         :
                         :
        v.               :  No. 1626 C.D. 2017
                         :
Workers' Compensation Appeal  :
Board (Geisinger Medical Center),  :
        Respondent   :

## **O R D E R**

AND NOW, this 20th day of June, 2018, the order of the Workers' Compensation Appeal Board dated October 4, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge