# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua N. Konzelman,             :
              Petitioner      :
                           :
           v.               :    No. 357 C.D. 2024
                           :    Submitted: February 4, 2025
YHWH 3:5-6, LLC (Workers'     :
Compensation Appeal Board),      :
              Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE STACY WALLACE, Judge (P.)
               HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: March 17, 2025

       Joshua N. Konzelman (Claimant), through his counsel Larry Pitt & Associates (Counsel), petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) that, relevantly, did not award the amount of litigation costs and attorney's fees that Claimant believes were authorized by the Workers' Compensation Act (Act).[1] On appeal, Claimant argues the Board's Order should be reversed because the WCJ erred: (1) by not approving Counsel's 20% attorney's fee on Claimant's medical benefits; and (2) by not awarding all of Claimant's litigation costs because Claimant prevailed on his Petition to Review Benefits (Review Petition) in part by having the description of his work injury expanded. Upon careful review, we discern no error or abuse of discretion and, therefore, affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

## I. BACKGROUND

The facts in this matter are generally not in dispute. Claimant worked as a manager for YHWH 3:5-6, LLC (Employer), which operated a Chick-fil-A restaurant. (WCJ's 8/16/2021 Decision (2021 Decision) Finding of Fact (FOF) ¶ 3.) Claimant sustained a work-related injury to his left knee on July 15, 2019, which was described in a Notice of Temporary Compensation Payable as a "Sprain or Tear [Internal derangement, a trauma or wrenching of a joint, producing pain and disability depending upon degree of injury to ligaments.]" (Certified Record (C.R.) Item 27 (bracketed material in the original).) Employer subsequently issued a Notice of Compensation Payable (NCP) that contained the same injury description. (*Id.* Item 28.) Claimant sought medical treatment and, ultimately, had two surgeries on his left knee. (2021 Decision FOF ¶ 3.) Claimant received wage loss benefits pursuant to the NCP until he returned to work, at which time the wage loss benefits were suspended.

Thereafter, Claimant filed the Review Petition, seeking to add a low back injury he believed developed due to his left knee injury and/or the treatment thereof to the NCP. (C.R. Item 2.) Claimant also filed a Petition to Review Medical Treatment (Medical Review Petition), asserting that Employer had not paid certain hospital or medical bills he claimed were for an emergency room visit that was due to his work-related injuries. (*Id.* Item 3.) The Petitions were consolidated and assigned to the WCJ.

### A. *The WCJ's First Decision*

Claimant offered his own testimony, both live and by deposition, and the deposition testimony of Stephen F. Ficchi, D.O., who is board certified in pain

2

management and family medicine.[2] Claimant testified about the incident, his left knee injury, the pain that developed in his low back, which he asserted was related to the left knee injury, and certain unpaid medical bills related to an emergency room visit for an alleged anxiety attack following one of his knee surgeries. Claimant indicated he understood that Counsel would be entitled to 20% of the "outstanding medical bills" and he understood the "recourse" for such deductions. (Reproduced Record (R.R.) at 28a.) Dr. Ficchi testified generally about Claimant's left knee injury and explained that Claimant had recently begun complaining about low back pain that interfered with his ability to perform his work duties. Dr. Ficchi acknowledged that Claimant's medical records did not reflect any treatment for low back complaints and that Dr. Ficchi had not diagnosed any work-related low back injuries, as he had not yet performed any diagnostic tests.

Employer proffered the deposition testimony of John Petolillo, D.O., a board-certified orthopedic surgeon, who diagnosed Claimant's left knee injury as including tears of his anterior cruciate ligament (ACL) and medial meniscus.[3] Dr. Petolillo observed Claimant had achieved maximum medical improvement as to the left knee. Dr. Petolillo opined, based on his physical examination and review of Claimant's medical records, that Claimant did not sustain a work-related low back injury.

The WCJ credited Claimant's testimony about the left knee injury but not the testimony regarding the existence of a work-related low back injury or anxiety attack that led to the emergency room visit. (2021 Decision FOF ¶¶ 7, 10.) Similarly, the

---

[2] Claimant's hearing and deposition testimonies are, respectively, Items 18 and 21 of the Certified Record, and are summarized in Findings of Fact 3 and 6 of the 2021 Decision. Claimant's deposition testimony may be found at pages 3a to 55a of the Reproduced Record. Dr. Ficchi's deposition testimony is Item 22 of the Certified Record, is found at pages 65a to 84a of the Reproduced Record, and is summarized in Finding of Fact 4 of the 2021 Decision.

[3] Dr. Petolillo's deposition testimony is Item 26 of the Certified Record and is summarized in Finding of Fact 5 of the 2021 Decision.

WCJ rejected Dr. Ficchi's testimony regarding an alleged low back injury, finding Dr. Petolillo's contrary testimony more persuasive. (*Id.* ¶¶ 8-9.) The WCJ further credited Dr. Petolillo's opinion that Claimant sustained, in addition to a left knee strain, tears to his medial meniscus and ACL. (*Id.* ¶ 12.)

Based on the credited testimony, the WCJ denied the Petitions seeking to add a low back injury and payment for medical bills but amended the NCP to include work-related tears to Claimant's left medial meniscus and ACL. (*Id.* ¶¶ 10-12; 2021 Decision Conclusions of Law (COL) ¶¶ 2-3.) The WCJ also ordered Employer to reimburse Claimant for $249.60 in litigation costs, rather than the $2,874.60 sought, because Claimant had prevailed in part in his litigation. (2021 Decision FOF ¶ 13; 2021 Decision COL ¶ 4.) The WCJ attributed the $249.60 as being related to Claimant's success in expanding the description of the work injury in the NCP to include the ACL and medial meniscus tears. (*Id.*)

### B. The Board's First Opinion

Claimant appealed, arguing, relevantly, that the WCJ erred in not awarding all the requested litigation costs and in not approving a 20% deduction from all medical bills paid by Employer for attorney's fees. (C.R. Item 8.) The Board affirmed the award of partial litigation costs, as such award was supported by precedent and the record. (Board's 7/8/2022 Opinion (2022 Op.) at 4-5.) On the issue of the attorney's fees, the Board agreed it was error for the WCJ not to have made a finding as to the fee agreement between Claimant and Counsel, which appears to include a 20% fee on all of Claimant's medical bills. (*Id.* at 6.) Accordingly, the Board "remand[ed] for the sole purpose of the WCJ to make a finding as to [the fee agreement's] reasonableness and to issue an accompanying order as to its applicability to ongoing medical benefits." (*Id.*) The WCJ was

4

directed to "make specific findings regarding the terms and intent of the fee agreement to be approved, including not only the amounts awarded to which the agreement applies, but also Claimant's understanding of its effect," in accordance with this Court's decision in *Neves v. Workers' Compensation Appeal Board (American Airlines)*, 232 A.3d 996 (Pa. Cmwlth. 2020). (*Id.* at 7-8.)

### C. The WCJ's Remand Decision

On remand, the WCJ offered Employer an opportunity to introduce evidence beyond Claimant's existing testimony, and Employer presented the fee agreement but declined to present additional testimony by Claimant. (WCJ's 6/22/2023 Decision (2023 Decision) FOF ¶¶ 8-9.) The WCJ examined the fee agreement and Claimant's deposition testimony regarding his understanding of that agreement as it pertained to medical benefits. In particular, the fee agreement provided that Counsel would "receive . . . 20%[] of all compensation payable to [Claimant] for as long as [Claimant] receive[d] workers' compensation benefits. This includes payment of all medical treatment and hospital bills" and that a "deduction of the [20%] fee will continue for the full duration of the time that [Claimant] continue[s] to receive wage loss or medical benefits." (R.R. at 2a.) For his part, Claimant testified as follows:

> Q. [] At this time, I'm going to ask you, sir, did you sign a fee agreement which provides that 20[%] of the outstanding medical bills be paid to [Counsel] as part of his fee?
>
> A. Yes.
>
> Q. And you understand that the provider will only receive 80[%] of the total bill, and there could be some recourse; but it's your understanding that as part of this claim, [Counsel] is claiming a fee on the bills.
>
> A. Yes, I understand.

5

(*Id.* at 28a-29a.) Claimant acknowledged that the only outstanding bill was related to an emergency room visit for an alleged anxiety attack after one of his knee surgeries, a visit that the WCJ found was not related to Claimant's work injury. (2021 Decision FOF ¶¶ 7, 11; 2023 Decision FOF ¶ 3; R.R. at 26a-27a.)

The WCJ rendered the following findings on the fee agreement and Claimant's understanding thereof:

> 10. This [WCJ] has reviewed and considered Claimant's testimony from the underlying litigation. Claimant testified that he "understands" there might be "recourse" concerning the 20% taken out of a medical bill to be paid to his attorney; however, there was no testimony as to Claimant's understanding as to what it potentially meant legally and financially over the lifetime of his claim. Claimant's testimony during his deposition addressed only one medical bill from a hospital emergency room. Based on Claimant's testimony, this [WCJ] finds that [Claimant's] only clear understanding in the instant matter is that his attorney would receive 20% of the one outstanding hospital bill[,] which was determined to be for medical treatment not related to the work injury. Significantly, Claimant has undergone two surgical procedures that would implicate possibly large medical bills, which was not addressed by his attorney. There is no evidence in the record that Claimant had any knowledge of the costs of the surgeries or other treatment and what potential amounts he could be facing. Also, there is no evidence that Claimant's medical providers have agreed with Claimant's counsel to accept 80% of repriced bills as total payment. Lastly, there was no testimony, and it is not addressed in the fee agreement, as to if a medical provider pursued Claimant for the 20% paid to his attorney, and there is not a fee agreement entered into with the provider, whether Claimant's counsel would represent him in the matter.
>
> 11. This [WCJ] finds based on review of the record from the underlying litigation and on Remand that Claimant does not have a clear understanding of the legal and financial effects of his attorney's proposed 20% fee on medical bills stemming from his work-related injury.

6

(2023 Decision FOF ¶¶ 10-11.) The WCJ found that Counsel had "failed to show that Claimant ha[d] a clear understanding of the financial effect of the approval of a 20% attorney fee on past and future medical bills, which were unspecified and speculative . . . ." (2023 Decision COL ¶ 2.) Therefore, the WCJ denied "the proposed 20% attorney fee on such bills . . . as not being fair or reasonable, consistent with Section 442 of the Act," 77 P.S. § 998.[4] (*Id.* (citing *Neves*, 232 A.3d 996).)

### D. The Board's Remand Opinion

Claimant again appealed, arguing the WCJ erred in finding there was no evidence of Claimant's understanding of the fee agreement to include a deduction from all medical benefits and that such issue is a question of law, subject to de novo review. (C.R. Item 13.) The Board disagreed, holding the WCJ has the authority in the first instance to determine the reasonableness of an attorney's fee and that while Employer's interpretation of Claimant's testimony differed from the WCJ's, this did not mean the WCJ's finding was not supported by substantial evidence. (Board's March 14, 2024 Opinion (2024 Opinion) at 4-5.) Based on the WCJ's supported findings, the Board affirmed the denial of the proposed 20% attorney's fee on Claimant's medical bills. (*Id.* at 5.) Finally, the Board finalized its prior Order that upheld the WCJ's determination to award litigation costs in part.[5] (*Id.* at 6-7.)

Claimant now petitions for review.[6]

---

[4] Section 442 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

[5] Commissioner Gabig concurred in the result only.

[6] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

7

## II.  DISCUSSION

### A. Fee Agreement

Claimant argues the Board erred in not approving the fee agreement's 20% deduction from his medical bills for an attorney's fee because such deductions are per se reasonable and permitted by Section 442 of the Act and *Neves*. Claimant maintains his testimony and the signed fee agreement establish that he understood that the 20% attorney's fee would be applied to all his awarded compensation, including medical benefits, and the potential impact thereof on Claimant. Further, Claimant asserts that, pursuant to *Williams v. City of Philadelphia (Workers' Compensation Appeal Board)*, 312 A.3d 976 (Pa. Cmwlth. 2024), there is ultimately no negative consequence to him from approving the fee because providers are precluded from "balance billing" him for any unpaid portion of his bills under Section 306(f.1)(7), 77 P.S. § 531(7).

Employer argues the WCJ did not err in not approving a 20% attorney's fee on Claimant's medical benefits where there was only "scant" evidence regarding Claimant's understanding of the fee agreement. (Employer's Brief (Br.) at 11.) Absent the development of a factual record reflecting that Claimant understood the full legal and financial ramifications of that agreement, Employer maintains the WCJ's decision should be affirmed. However, if the Court was to decide that the fee agreement so provides, Employer asks that any fee be limited to medical treatment incurred after our decision as opposed to those that have already been paid by Employer.

Section 442 states that "[a]ll counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any [WCJ] or the [B]oard, . . . shall be approved by the [WCJ] or [B]oard as the case may be, providing the counsel

8

fees do not exceed twenty per centum of the amount awarded." 77 P.S. § 998. Our Supreme Court has stated the purpose of this section is to protect claimants "against unreasonable fees charged and imposed on them by their attorneys under their own improvident fee agreements." *Weidner v. Workmen's Comp. Appeal Bd. (Firestone Tire & Rubber Co.)*, 442 A.2d 242, 244 (Pa. 1982). However, we have recently held, based on Section 442's plain terms, that a WCJ is not to "inquir[e] into the reasonableness of a 20% fee agreement," and "[a] 20% counsel fee is per se reasonable." *Neves*, 232 A.3d at 1006-07.

Our case law has established several principles regarding the approval of contingent fee agreements under Section 442.

> First, the counsel fee should be calculated against the entire award, without regard for whether the award is for medical or indemnity compensation. . . . . Second, the terms of the fee agreement govern, and **it is incumbent upon the claimant to establish that the parties intended that the counsel fee be applied to the entire award, including medical compensation**. . . . .

*Id.* at 1005 (citations omitted) (emphasis added). On this last point, a claimant's understanding of the fee agreement is essential. "The claimant should understand that a fee may be taken not only on retroactive compensation owing, but on continuing, future payments . . . ." David Torrey & Andrew Greenberg, Workers' Compensation Law & Practice, 8 PA. PRAC. § 17:29 (West 2024) (hereinafter Torrey & Greenberg).

In *Neves*, we upheld a fee agreement as to medical benefits based on the agreement's language, which stated: "In consideration for services rendered and to be rendered, [the claimant] agree[s] to pay [her] attorney a sum equal to 20% percent (sic) of whatever may be recovered from said claim," and the claimant's attestation that she understood the agreement "applied to past due medical expenses as well as

any wage loss benefits" and could be held accountable for the balance of the bill by the providers if they were dissatisfied with the reduced amount they received. 232 A.3d at 999. *Neves* specifically involved past due medical benefits, as the remainder of the claim had been voluntarily resolved. *Id.* We observed there were potential conflicts of interest between claimants and their counsel in such agreements, as it could open claimants up to liability, but concluded these were policy issues to be addressed by the General Assembly, not the Court. *Id.* at 1007-08.

Subsequently, in *Williams*, we addressed a 20% fee agreement and whether it could be applied to future medical benefits. There, the agreement specifically provided for such, and the claimant testified that her understanding of that agreement was that it applied to outstanding and future medical benefits and, that, theoretically, she could be liable to providers for the balance. In holding the fee agreement could apply to future medical benefits pursuant to Section 442 and *Neves*, we rejected the Board's analysis that the speculative nature of the future medical benefits precluded the approval of the attorney's fee. We explained "the rule from *Neves* is broad and not limited to only those medical expenses that have been actually incurred and billed at the time of a hearing before a [WCJ]" as "[i]n many cases . . . at least a portion of a claimant's medical expenses are incurred after the claimant executes a fee agreement with his or her counsel." 312 A.3d at 988. To reject an "otherwise per se reasonable" fee agreement due to it being "based on unknown and 'speculative' future medical expenses," we held, was "untenable under *Neves* and Section 442[.]" *Id.* Importantly, we clarified that the concern related to a claimant being liable for the remainder of the bill was no longer valid because Section 306(f.1)(7) prohibits providers from "balance billing" employees the difference

10

between what is billed and what is paid. *Id.* at 990 (citing 77 P.S. § 531(7)[7]). Ultimately, we concluded:

> [O]ur decision in *Neves* and the language of Section 306(f.1)(7) are clear. A 20% counsel fee agreement applicable to all workers' compensation benefits received by a claimant is per se reasonable. A medical provider that provides medical services to treat a compensable injury under the Act may not recoup directly from a claimant any portion of any payment deducted to pay a counsel fee.

*Id.*

We most recently addressed this issue in *Elder v. Crane Resistoflex (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 788 C.D. 2023, filed September 11, 2024).[8] There, the claimant, represented by Counsel here, challenged the Board's affirmance of the denial of a 20% attorney's fee on future medical benefits based on the WCJ's finding the claimant's testimony did not support that fee because, while it reflected he understood the fee agreement applied to both types of

---

[7] This section states, in pertinent part:

> A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this [A]ct. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.

77 P.S. § 531(7). Section 127.211(a) of the Board's regulations, provides:

> A provider may not hold an employe liable for costs related to care or services rendered in connection with a compensable injury under this [A]ct. A provider may not bill for, or otherwise attempt to recover from the employe, the difference between the provider's charge and the amount paid by an insurer.

34 Pa. Code § 127.211(a).

[8] *Elder*, an unreported panel opinion, is cited for its persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

benefits,[9] it did not show he was aware of what his future medical costs would be or that he could be liable to the provider for outstanding amounts. *Elder*, slip op. at 3. We reversed, citing *Neves* and *Williams*, reasoning the bases cited by the WCJ and Board for denying the fee were no longer valid and the claimant's testimony that he understood the agreement covered both wage loss and medical benefits met his burden of proving the intent that the fee agreement was intended to cover the **entire** award, including future medical benefits. *Elder*, slip op. at 14-15.

Following *Neves*, *Williams*, and *Elder*, there is no longer any question that a 20% attorney's fee on both indemnity benefits and medical benefits is per se reasonable and that concerns regarding a claimant's potential liability to medical providers cannot be used to deny an attorney's fee on medical benefits. The remaining question is whether Claimant established **his** understanding that **this fee agreement** in particular covered both types of benefits and encompassed deductions of a 20% attorney's fee for all medical benefits both outstanding and into the future. *Neves*, 232 A.3d at 1005; Torrey & Greenberg, 8 PA. PRAC. § 17:29.

The fee agreement here is the same as in *Elder*, providing, in relevant part:

---

[9] The testimony found to be sufficient in *Elder* was as follows:

Q. And [] you signed something that said if you get indemnity benefits, which is when you're not working, that we would get 20[%] of that; you understand that, correct?

A. Yes.

Q. And then you also signed an agreement that if we get your medical bills all paid, we would get 20% of that; do you understand that?

A. Yes.

*Elder*, slip op. at 4-5.

12

> I recognize the contingent nature of this claim and the fact that [C]ounsel may not receive any compensation. Should no money be recovered following suit or settlement, [C]ounsel shall have no claim of any kind against me for any professional services rendered. However, once the contingency does occur, [Counsel] will receive []20%[] of all compensation payable to me for as long as I receive workers' compensation benefits. This includes payment of all medical treatment and hospital bills.

> * * * *

> The contingency is the award by any [WCJ] of a fee of [20%] deductible from any award of wage loss or medical benefits or any order permitting me to continue to receive wage loss or medical benefits. Once this contingency occurs the deduction of the [20%] fee will continue for the full duration of the time that I continue to receive wage loss or medical benefits.

(R.R. at 2a.) The fee agreement facially provides for the deduction of a 20% attorney's fee on Claimant's indemnity and medical benefits.

What remains to be determined is whether the WCJ erred in finding that Claimant did not clearly understand that this 20% attorney's fee would be deducted from his future medical benefits, rather than just on the outstanding medical bills that Claimant was attempting to recover in the Medical Review Petition. Although Claimant argues his deposition testimony reflects his understanding that the fee would be applicable to **all** his medical benefits, the WCJ found otherwise. Upon review of the testimony **in this case**, we discern no error in that finding.

The **entirety** of Claimant's testimony regarding the fee agreement, and its applicability to his medical benefits, as we stated above, is as follows:

> Q. [] At this time, I'm going to ask you, sir, did you sign a fee agreement which provides that **20[%] of the <u>outstanding</u> medical bills be paid to [Counsel] as part of his fee**?

> A. Yes.

13

Q. And you understand that the provider will only receive 80[%] of the total bill, and there could be some recourse; but it's your understanding that as part of this claim, [Counsel] **is claiming a fee <u>on the bills</u>**.

A. Yes, I understand.

(R.R. at 28a-29a.) Unlike the claimant in *Elder*, who was asked about his medical bills generally, slip op. at 3, Claimant, here, was asked only about the attorney's fee as it related to his "**outstanding medical bills**." (R.R. at 28a (emphasis added)).

As Claimant's Medical Review Petition specifically sought payment of an outstanding medical bill related to his emergency room visit for his alleged anxiety attack, this was the only medical bill he testified to as being unpaid, and given Claimant's response to **Counsel's questioning** specifically related to **outstanding** medical bills, the WCJ found that Claimant's "only clear understanding in the instant matter is that his attorney would receive 20% of the **one outstanding hospital bill** which was determined to be for medical treatment not related to the work injury." (2023 Decision, FOF ¶ 10 (emphasis added).) Because "a reasonable mind might accept [the cited evidence] as adequate to support" the WCJ's finding, that determination is supported by substantial evidence. *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008). That Claimant, or Counsel, "might view the testimony differently than the [WCJ][] is not grounds for reversal if substantial evidence supports the [WCJ's] findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106, 1109 (Pa. Cmwlth. 2004). To obtain approval for the 20% fee agreement on the medical benefits, both outstanding and into the future, Claimant bore the burden of establishing that he clearly understood that to be the case. Claimant's testimony, as the WCJ found, did not establish that understanding beyond the **outstanding** medical bill at issue, and,

14

therefore, we discern no error or abuse of discretion in the remand determination on this issue.[10]

### B. *Litigation Costs*

Claimant next argues the WCJ erred in not awarding him all his litigation costs because he was successful in his litigation, in part, because the WCJ expanded his work injury to include tears of his left ACL and medial meniscus. In such situations, Claimant contends, he is entitled to reimbursement of his reasonable litigation costs pursuant to Section 440 of the Act, 77 P.S. § 996.[11] According to Claimant, the WCJ's attribution of the expanded definition to Dr. Petolillo alone was error because Dr. Ficchi also spoke of the knee injury as including these injuries. Because the expanded knee injury "was, in part, defined by . . . Dr. Ficchi, the litigation cost associated with Claimant's medical provider should have been awarded" pursuant to *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25 (Pa. Cmwlth. 2005). (Claimant's Br. at 11.)

Employer responds the WCJ properly limited litigation costs in this matter because in order to be entitled to such costs the claimant must prevail on the issue in dispute. Here, it argues, the issue in dispute in the Review Petition was the existence of a work-related low back injury, an issue on which Claimant did not prevail. Employer maintains the WCJ found that Dr. Ficchi did not provide that description of the injury and, therefore, relied on Dr. Petolillo's credited diagnoses to expand Claimant's work-related knee injury. Because Claimant did not prevail on the only

---

[10] We acknowledge that some of the WCJ's reasons for denying the attorney's fee on Claimant's medical benefits could fall within the type of analysis rejected by *Neves* and *Williams*. However, Claimant's testimony, prompted by Counsel's questioning, supports the WCJ's determination notwithstanding those other reasons.

[11] Section 440 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

issue raised in the Review Petition and about which Dr. Ficchi testified, Employer asserts the WCJ committed no error in excluding the litigation costs related to that issue. *Minicozzi* is distinguishable because unlike in that matter, Employer argues, Claimant did not receive any "practical quantifiable benefit as a result of litigating the Review Petition" because "there was never any dispute that [C]laimant sustained an ACL and meniscal tear, and [C]laimant did not present any evidence that Employer failed to pay for any treatments for those diagnoses." (Employer's Br. at 10.)

Section 440(a) provides, in relevant part, that

> [i]n any contested case where the insurer has contested liability in whole or in part, . . . the employe . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award of compensation, **a reasonable sum for costs incurred** for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend proceedings.

77 P.S. § 996(a) (emphasis added). "[I]n order for litigation costs to be considered reasonable, and thus reimbursable, they must '**relate to the "matter at issue" on which [the c]laimant prevailed**.'" *Barrett v. Workers' Comp. Appeal Bd. (Sunoco, Inc.)*, 987 A.2d 1280, 1289 (Pa. Cmwlth. 2010) (quoting *Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 874 A.2d 717, 722 (Pa. Cmwlth. 2005)) (emphasis added). Partial litigation costs may be awarded where those costs are **attributable to the part of the litigation on which the claimant prevails**. *Minicozzi*, 873 A.2d at 31. A claimant who prevails in part in contested litigation is entitled to reimbursement of litigation costs where the claimant "achieve[s] a **practical, quantifiable benefit** as a result of" the litigation. *Id.* (emphasis added).

Claimant filed the Review Petition seeking to expand his accepted work-related knee injury to include a **low back injury** that he developed as a result of his

knee injury. (C.R. Item 2.) Dr. Ficchi's testimony was offered in support of this claim. Claimant did not prevail on this issue and, therefore, was not entitled to reimbursement of the costs associated with that issue, i.e., Dr. Ficchi's deposition. While the extent or nature of Claimant's accepted work injury was not directly raised in the Review Petition, the WCJ nevertheless expanded the description of the work-related knee injury based on the credited evidence, i.e., Dr. Petolillo's testimony. Dr. Petolillo expressly opined, based on his examination of Claimant's medical records and physical examination of Claimant, that Claimant "sustained an [ACL] tear and a medial meniscal tear of the left knee as a result of his work-related injury of July 15th, 2019." (C.R. Item 26 at 13.) Claimant contends Dr. Ficchi partially defined Claimant's knee injury as being beyond a sprain, but the WCJ did not rely on Dr. Ficchi's testimony, which, **at most**, made passing reference to the nature of Claimant's knee injuries as part of the history provided by Claimant. (*see* 2021 Decision FOF ¶ 12, R.R. at 70a). Because Dr. Ficchi's testimony was not used as the basis to expand the definition of Claimant's work-related injury, we agree with the Board that "the cost of [his] deposition fee cannot be considered a litigation cost attributable to the portion of the litigation of the Review Petition in which Claimant was successful." (2022 Op. at 5.) Accordingly, we discern no error in the limited award of litigation costs here.

To the extent Claimant argues this matter is akin to *Minicozzi* and he should be awarded all his litigation costs because he partially prevailed, that case is distinguishable. The claimant in *Minicozzi* was successful, in part, in defending against the employer's modification petition by delaying the modification, resulting in his receipt of more than $12,000.00 in wage loss benefits. *Id.* This "practical, quantifiable benefit," 873 A.2d at 31, relating to the issue in dispute, justified the

award of the litigation costs associated with that issue. Here, the issue in dispute in the Review Petition was whether Claimant sustained a low back injury as a result of his work-related knee injuries; he did not prevail on that issue. And, although the description of the work injury was expanded to include the torn left ACL and meniscus, Claimant does not assert, nor does the record reflect, what "practical, quantifiable benefit," *id.*, this endued Claimant. There is no indication that Employer ever disputed these injuries or denied payment for medical treatment related thereto. Indeed, it paid for the two surgeries attributable to those injuries and for the wage losses Claimant experienced following those surgeries. Therefore, *Minicozzi* does not require a different result.

## III. CONCLUSION

For the foregoing reasons, we discern no error or abuse of discretion in the Board's affirmation of the WCJ's decisions. Accordingly, we affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua N. Konzelman,       :
              Petitioner       :
                        :
          v.            :    No. 357 C.D. 2024
                        :
YHWH 3:5-6, LLC (Workers'       :
Compensation Appeal Board),       :
              Respondent       :

# O R D E R

    **NOW**, March 17, 2025, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

                           _____

                           RENÉE COHN JUBELIRER, President Judge